UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

VS.  CASE NO: 2:16-cr-62-FtM-UAMRM

ERIC DAVID ERDMANN

## ORDER

This matter comes before the Court on Defendant Eric David Erdmann's Motion for Miscellaneous Relief (Doc. #25) filed on September 7, 2016. The Government filed its Response in Opposition (Doc. #29) on September 22, 2016, and pursuant to leave granted by the Court, Erdmann filed a Reply (Doc. #34) on September 30, 2016. The matter is ripe for review.

## BACKGROUND

This case revolves around a single count indictment charging Erdmann, who was previously convicted as a sex offender in Oregon, for failing to promptly register as such upon moving to Florida. (Doc. #1). Specifically, in approximately 2010, Erdmann was convicted of Encouraging Child Sexual Abuse in the Second Degree in Oregon. (Doc. #1 at 1). As a result, Erdmann qualifies as a sex offender within the definition of 42 U.S.C. § 16901 *et seq*. (Doc. #1 at 1).

Subsequent to his conviction, Erdmann traveled to Cambodia, where he resided for a number of years. (Doc. #1 at 1-2). During that time, Erdmann represents that he became romantically associated with a Cambodian national, Aun Pol. (Docs. #25 at 1, #34 at 1). Erdmann further represents that he cohabitated with Pol for five years, and

that despite the fact that they were not legally married, that he and Pol considered themselves to be tied together through common law marriage. (Doc. #34 at 2 n. 1).

On April 27, 2016, Erdmann traveled from Cambodia to his father's home in Punta Gorda, Florida. (Doc. #25 at 3). Erdmann contends that the purpose of the trip was to resolve immigration and legal issues in the United States and to seek treatment for injuries that stemmed from a motorcycle crash that occurred in Cambodia. (Doc. #25 at 3). After arriving, Erdmann failed to register in Florida as a sexual offender, and was arrested on May 26, 2016. (Doc. #4).

Erdmann now moves the Court to allow a videotaped deposition of Pol in Cambodia because she is unable to appear in the United States for the trial of this matter, and because her testimony would provide material and exculpatory evidence. (Doc. #34 at 1-5). Erdmann states that Pol's testimony would establish that in March of 2016, he was involved in a motorcycle accident in Cambodia resulting in the compound fracture of his left tibia. (Doc. #25 at 2-3). He further states that Pol would have knowledge that he received multiple surgeries in Cambodia as a result of his accident, and that prior to his departure, his wounds were not healing. (Doc. #25 at 3). The Court finds that Pol's expected testimony is not material, and therefore denies Erdmann's Motion.

## DISCUSSION

Motions to take a deposition pursuant to Federal Rule of Criminal Procedure 15 are generally within the discretion of the court. *See Heflin v. United States*, 223 F.2d 371, 375 (5th Cir. 1955).[1] For the most part, depositions are disfavored in criminal cases. *See*

---

[1] The Fifth Circuit's decision in *Heflin* is binding on this Circuit, as it was decided prior to the creation of the Eleventh Circuit Court of Appeals on September 30, 1981. *Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981)*.

*United States v. Siddiqui*, 235 F.3d 1318, 1323 (11th Cir. 2000). This is particularly true in the context of foreign depositions. *See Id.* This is because deposition testimony "is not subject to cross-examination to the same extent as trial testimony[,]" as well as because the fact finder is unable to observe the demeanor of the deposition witness. *See United States v. Alvarez*, 837 F.2d 1024, 1029 (11th Cir. 1988); *see also U.S. v. Drogoul*, 1 F. 3d 1546, 1552 (11th Cir. 1993). Notably, foreign deposition testimony is also suspect because of the absence of a sanction for perjury. *Alvarez*, 837 F. 2d at 1029.

Still, "depositions are authorized when doing so is necessary to achieve justice and may be done consistent with the defendant's constitutional rights." *Siddiqui*, 235 F.3d at 1323 (internal citations omitted). This requires the existence of "exceptional circumstances" and can only occur when the deposition would be "in the interests of justice." Fed. R. Crim. P. 15(a)(1); *see also United States v. Thomas*, 62 F.3d 1332, 1340 (11th Cir. 1995). The Eleventh Circuit has held these concerns to be governed by a considering whether "(1) the witness is unavailable to testify at trial; (2) injustice will result because testimony material to the movant's case will be absent; and (3) countervailing factors render taking the deposition unjust to the nonmoving party." *United States v. Ramos*, 45 F.3d 1519, 1522–23 (11th Cir. 1995) (emphasis omitted) (citing *Drogoul*, 1 F. 3d at 1554).

That said, "a court does not abuse its discretion where it denies a motion under Rule 15(a) because the evidence is in some respects irrelevant and in others cumulative and possibly inadmiss[i]ble as hearsay." *United States v. Feijoo-Tomala*, 751 F. Supp.

3

40, 43 (E.D.N.Y. 1990) (citing *United States v. Hernandez–Escarsega,* 886 F.2d 1560, 1569–1570 (9th Cir.1989)).

   I.   **Unavailability**

The moving party may demonstrate the probable unavailability of a prospective deponent through affidavits or otherwise." *Drogoul*, 1 F.3d 1546, 1553 (11th Cir. 1993) (citation omitted).  This "showing need not be conclusive before a deposition can be taken. *Id.* (citation omitted).  Instead, "[a] potential witness is unavailable for purposes of Rule 15(a) . . . whenever a substantial likelihood exists that the proposed deponent will not testify at trial." *Id.*

Turning to the matter at hand, Erdmann asserts that a substantial likelihood exists that Pol will be unable to testify at trial because she is a Cambodian citizen who lacks authorization to travel to the United States.  Specifically, Erdmann represents that Pol requested a non-immigrant business visa to enter the United States, which was denied because of Pol's ties to the United States were too strong, and the corresponding concern that Pol would not return to Cambodia after trial.² (Doc. #25 at 2).  Erdmann also alleges that prior to filing the instant Motion, he unsuccessfully reached out to the Government for assistance with a temporary visa so Pol could testify at trial.  (Doc. #25 at 2).

The Government argues that granting Erdmann's Motion would be improper because his Motion does not indicate what type of visa Pol requested, and therefore that he has not shown he has made a good faith effort to produce Pol at trial.  This is not the standard within the Eleventh Circuit.  All that is required is a substantial likelihood that the

---

² Erdmann alleges that he did not seek a spousal visa for Pol because the pair are not married.  Separately, he alleges that he did not seek a fiancé visa because by the time such a visa would be granted, the trial in the instant matter would have concluded. (Doc. #34 at 2).

4

person will be unavailable for trial. *Drogoul,* 1 F.3d at 1553. The type of visa that Pol requested is immaterial. And, as a result of the denial of her visa, Pol is left without a realistic way to enter the United States. This is sufficient evidence that there is a substantial likelihood she will be unavailable at trial.

## II. Materiality

"The principal consideration guiding whether the absence of a particular witness's testimony would produce injustice is the materiality of that testimony to the case. *Drogoul,* 1 F.3d at 1552. Under this standard, material is a term of art that means material to the party moving to depose. *Ramos,* 45 F.3d at 1523 (emphasis omitted). And, to satisfy this burden, the movant "must alert the district court to the substance of the evidence that is at peril of being excluded." *Id.*

As to Rule 15 motions, courts have applied the standards for material and exculpatory information developed in interpreting *Brady v. Maryland,* 373 U.S. 83 (1963). *United States v. Sanford, Ltd.*, 860 F. Supp. 2d 1, 4 (D.D.C. 2012). The materiality analysis requires examining the expected testimony of the proposed deponent

> to ascertain (i) whether it is exculpatory, *i.e.,* tends to negate an element of the crime or to establish a defense, and (ii) whether it is cumulative of other evidence." *Id.* Determining whether forecasted testimony is exculpatory involves three steps: first, identifying the elements of the crime; second, outlining the forecasted testimony; and third, comparing "the elements and the forecasted testimony to ascertain whether the forecasted testimony negates any element of the charged crime or establishes a defense.

*United States v. Jefferson*, 594 F. Supp. 2d 655, 667 (E.D. Va. 2009)

As such, "[e]vidence is material . . . when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different."

*Sanford, Ltd.*, 860 F. Supp. 2d at 4–5 (internal quotation marks, alterations, and citations omitted). Notably, "[a] reasonable probability does not mean that the defendant would more likely than not have received a different verdict with the evidence, only that the likelihood of a different result is great enough to undermine confidence in the outcome of the trial." *Id.* (internal quotation marks, alterations, and citations omitted).

Turning to the matter at hand, Erdmann argues that injustice would result if Pol is not allowed to be deposed because she is the only person who can present potentially exculpatory evidence to the crime for which he is charged. Notably, 18 U.S.C. § 2250(a) provides an affirmative defense to the crime of failure to register as a sex offender if: (1) [u]ncontrollable circumstances prevented the individual from complying; (2) [t]he individual did not contribute to the creation of such circumstances in reckless disregard of the requirement to comply; and (3) [t]he individual complied as soon as such circumstances ceased to exist. *Id.*

Thus, Erdmann argues that, aside from himself, Pol is the only one that can testify that he was injured in a motorcycle accident prior to coming to Florida, that he suffered complications from treatment, and that he did not create his condition in reckless disregard of his requirement to register as a sex offender in Florida. The Government responds that Erdmann, or others in the United States, can testify as to Erdmann's condition and thus that Pol's testimony is cumulative. Moreover, the Government argues that even Pol were allowed to be deposed, her testimony would be irrelevant because she has no basis of knowledge concerning what Erdmann did once he arrived in Florida.

Attempting to counter that Government's argument that Pol's testimony would be cumulative, Erdmann argues that such a finding would incentivize him to testify in his own

defense and would therefore violate his Fifth Amendment right against self-incrimination. The Fifth Amendment states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend. V. The proper framework to view a Rule 15 deposition is "not to infringe a defendant's Fifth Amendment right in any way." *Jefferson, 594 F. Supp. 2d 655, 668 n. 18 (E.D. Va. 2009)*.

That said, Erdmann's argument misses the mark as to the materiality of Pol's testimony. First, he specifically alleges that Pol arrived at the scene "approximately 10 minutes after the accident." (Doc. #25 at 3). As such, because she was not at the scene to witness the accident, any testimony as to *how* Erdmann was originally injured would be either speculation or hearsay.

And, even if Pol was present to observe the accident, the crux of Erdmann's affirmative defense is not that the motorcycle accident rendered him unable to register his presence in Florida; conversely, Erdmann's defense is ground in the medical complications he had from multiple surgeries in Cambodia, which he argues forced him to seek immediate medical treatment upon arriving in Florida. Thus, the material inquiry here goes to the reason Erdmann encountered medical complications. Medical doctors and reports within the United States speak to the issue of the medical complications and why that would ultimately prevent Erdmann from registering immediately upon entering the United States. Erdmann fails to explain a plausible basis as to how Pol's testimony would speak to this factor, and indeed the Court is unconvinced that she could offer more than speculation or inadmissible hearsay gained from Erdmann's Cambodian doctors. As such, the Court cannot find a reasonable probability that failure to include Pol's expected

7

testimony would undermine confidence in the result of a trial on the merits. Therefore, her expected testimony is not material and Erdmann's Motion must be denied.[3]

Accordingly, it is now

**ORDERED:**

Defendant David Erdmann's Motion for Miscellaneous Relief ([Doc. #25](Doc. #25)) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this October 27, 2016.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record

---

[3] Because Pol's anticipated testimony is not material, the Court need not analyze whether her deposition would potentially cause injustice to the Government.