UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

CASE NO. 2:16-cr-62-FtM-99MRM

v.

ERIC DAVID ERDMANN
a/k/a Eric Erdman

**UNITED STATES' FIRST MOTION IN LIMINE TO ADMIT INTRINSIC ACT EVIDENCE NOT SUBJECT TO FEDERAL RULE OF EVIDENCE 404(b) OR IN THE ALTERNATIVE, GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE EVIDENCE OF OTHER CRIMES, WRONGS OR ACTS <u>PURSUANT TO FED. R. EVID. 404(b)</u>**

The United States of America, by and through the undersigned Assistant United States Attorney, hereby moves this Court to permit the government to introduce, during its case-in-chief at trial, intrinsic act evidence inextricably intertwined with the charged offense. As described *infra*, the evidence at issue is relevant and not excludable under Federal Rule of Evidence 403. In the alternative, the United States notifies this Honorable Court and defense counsel that it intends to introduce certain evidence pursuant to Fed. R. Evid. 404(b), of other crimes, wrongs or acts that the defendant committed.

The defendant was convicted of a sex offense in the State of Oregon (Oregon) as alleged in the Indictment. (Doc. 1). As a result of that conviction, the defendant is required to register as a sex offender and maintain that registration current pursuant to 42 USC § 16913. The defendant initially registered as a sex offender in Oregon in 2010, however, he violated his Oregon state probation by not updating his registration when he absconded from Oregon and travelled to

the Kingdom of Cambodia (Cambodia). The defendant also violated his probation when he worked at a school for children in Cambodia and when he failed to notify his probation officer about his employment at the school for children and the university where he worked in Cambodia.   In April 2016, the defendant returned from Cambodia to the State of Florida (Florida) and did not register as a sex offender in Florida as required by 42 USC § 16913 or the Florida statutes.

Though it is unknown what the defendant might claim at trial, if anything, nonetheless, the defendant could claim that he was under the mistaken belief that he did not have to register as a sex offender when he left Cambodia and came to the Florida.  The United States seeks to admit (1) the defendant's conviction in the Multnomah Circuit Court, Multnomah County, Oregon, case number 09-01-30068, DA 2153456-1, for five Counts of violation of Oregon Statute § 163.686, encouraging child sexual abuse in the second degree, (2) evidence associated with this conviction wherein the defendant acknowledged his sex offender registration requirements, (3) Defendant's prior sex offender registration and evidence pertaining to the prior registration failures, advisements, and his registration success (4) the defendant's 128-day jail sentence in Oregon, (5) his sentence to 3 years of probation with conditions and violations of those conditions, without limitation, the prohibition against contact with children, *inter alia*, not to frequent places such as schools and limitations on how he can use digital devices,  as well as the defendant absconding from his Oregon state probation when he left Oregon and went to Cambodia without

updating his sex offender registration, (6) his un-monitored possession of digital devices in Cambodia and in Florida.

## I. BACKGROUND

In short, on May 25, 2016, a federal grand jury sitting in the Fort Myers Division returned an Indictment alleging that on or about April 29, 2016, and continuing until the return of the Indictment, the defendant was living in Charlotte County[1], Punta Gorda, Florida. From his arrival to Florida until the time of the return of the Indictment, the defendant never registered as a sex offender pursuant to 42 USC § 16913, in violation of 18 USC § 2250 and Florida Statutes §§ 943.0435, 944.607(13)(a). The last time he registered with authorities was on July 20, 2010, in Oregon, but he failed to update his sex offender registration with the Oregon authorities when he left Oregon and went to Cambodia. Additionally, the Defendant failed to register as a sex offender pursuant to Florida Statute § 943.0435(b)(2) and 42 USC §§ 16913(a)(c), when he travelled through interstate and foreign commerce from Cambodia to Florida on April 29, 2016, and continued residing in Florida until the present. 42 USC § 16913(c) requires that a sex offender "shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry." The defendant should have informed authorities that he was no longer teaching a

---

1 The section of the Indictment that lists the defendant residence as Charlotte County is an error. The United States will file a Superseding Indictment correcting the error, the area of Punta Gorda where the defendant lived is in Lee County, Florida.

school for children or at a university and that he had changed his residence from Cambodia to Florida.

The Defendant was required to register as a sex offender because on or about July 13, 2010, the Defendant was convicted in the Multnomah Circuit Court, Multnomah County, Oregon, case number 09-01-30068, DA 2153456-1, for five Counts of violation of Oregon Statute § 163.686, encouraging child sexual abuse in the second degree. As a result of that conviction, the defendant was sentenced to a time-served jail sentence, a three (3) year term of probation, and his was required to register as a sex offender.

During his time in Oregon state probation, he was assigned a probation officer from the Multnomah County Department of Community Justice, Adult Probation and Parole Field Office to monitor his probation. As part of his probation, the defendant was required to meet with the probation officer regularly and discuss his progress. During his meetings with the probation officer, he would express displeasure with the terms of his probation, his belief that he had been unfairly convicted of his underlying sex offense, and his frustrations with his inability to find employment as required by his probation. The defendant also told the probation officer that the state prosecutor did not care if he left the country and that he was going to leave and no one would ever see him again, to which the probation officer advised him to not take such action since condition 5 of his general supervision probation, encapsulated in a document which he signed and acknowledge, said that he was to remain in Oregon unless he received written permission from the probation officer to leave the state. Additionally, condition 16

4

of his general supervision probation states that the defendant, *inter alia,* must report within ten (10) days to the appropriate officials, a change of address, and a change of work.  The last meeting that the defendant had with the probation officer was on December 8, 2010, in which they discussed his eviction from a half-way house for not complying with the requirement that he attempt to find employment. On December 15, 2010, the probation office requested that the state court issue an arrest warrant because the defendant had absconded from Oregon without seeking permission from the probation officer, in violation of Condition 5 of his supervised release terms, consequentially a warrant was subsequently issued.

The defendant did not update his sex offender registration as to his change of residence as required by Condition 16, when he left Oregon. The next time that the probation officer heard from the defendant was on April 21, 2016, when he telephoned the probation officer from Cambodia to advise that he was overseas, though he did not say precisely where he was located, and to ask that the arrest warrant be removed in order to alleviate his passport problems. The probation office let him know that they could not rescind the warrant and that he would have to return to Oregon to sort out the arrest warrant.

While the defendant lived in Cambodia, he taught at an English school for children and at a university and he had un-monitored access to a computer at his residence. The defendant did not notify his probation officer that he was teaching English at a school for children or at a university in violation of his probation. Additionally, the defendant had several meetings with agents from the

5

Department of Homeland Security where he expressed acknowledgement of a warrant for his arrest in Oregon due to his failure to update his sex offender registration and absconding from his probation obligations.

The defendant has been aware of this conviction since at least the grand jury indicted him. The defendant has also been aware that the United States intends to introduce this conviction and registration documents to prove the elements of this case. The United States disclosed the copies of the certified convictions and other registration documents to the defendant on June 6, 2016. (Doc. 12).

The United States anticipates that the defendant may argue at trial that, to the extent he did not register as a sex offender, that it was a "mistake" or an accident that he did not register, in addition to or instead of any other defenses he may make.

## II. DISCUSSION

a. Defendant's Sex Offender Registration and Subsequent Failure to Update his Registration are Intrinsic Act Evidence Not Subject To Federal Rule Of Evidence 404(b)

Intrinsic evidence does not fall within the scope of Federal Rule of Evidence 404(b). *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007). In particular, "criminal activity other than the charged offense . . . falls outside the scope of [Rule 404(b)] when it is '(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense.'" *Id.* (citation

omitted); *see also United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998) ("Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury."). "Evidence that forms [an] integral and natural part of the witness's account[] of the circumstances surrounding the offenses for which the defendant was indicted is admissible even if it tends to reflect negatively on the defendant's character." *United States v. Foster*, 889 F.2d 1049, 1053 (11th Cir. 1989) (internal quotation marks omitted). Notably, intrinsic evidence is not subject to the notice requirements of Rule 404(b). *United States v. Leavitt*, 878 F.2d 1329, 1339 (11th Cir. 1989). Whether evidence is intrinsic or extrinsic, it is subject to the restrictions of Federal Rule of Evidence 403. *See United States v. Baker*, 432 F.3d 1189, 1219 n.36 (11th Cir. 2005).

> 1. The Defendant's Sex Offender Registration and Subsequent Failure to Update his Registration Reflect a Pattern of Conduct Related to the Charged Offenses

Uncharged criminal conduct is admissible intrinsic evidence where it reflects a pattern of criminal activity related to the charged offenses. The Eleventh Circuit's decision in *United States v. Muscatell,* 42 F.3d 627 (11th Cir. 1995) is instructive in this regard. In *Muscatell*, the defendants engaged in a complex land-flipping scheme that involved artificially inflated property appraisals, false information in loan applications, and a buyer rebate scheme for a quadraplex development. *Id.* at 628-29. At trial, the government presented

three witnesses to testify about prior and subsequent property deals involving the defendants: (1) a property appraiser who was asked by the defendants to provide a favorable (*i.e.,* inaccurate and inflated) appraisal in a subsequent property deal involving another quadraplex development; (2) a straw purchaser who bought properties for the defendants and submitted fraudulent loan documents in a prior property deal; and (3) an individual who represented buyers in similar buyer rebate schemes involving the defendants both *prior* and *subsequent* to the charged offenses. *Muscatell,* 42 F.3d at 629. The defendants claimed this testimony was extrinsic evidence subject to the restrictions of Rule 404(b). *Id.* at 630. In disagreeing with the defendants, the Eleventh Circuit held:

> We believe that the challenged testimony was properly admissible as intrinsic evidence of the same series of transactions as the charged offenses. The charged offenses were not isolated acts, but rather, were part of a series of transactions involving the same principal actors, in the same roles, employing the same modus operandi. . . . "[O]ther transactions connected with the offenses charged have long been used to show a general pattern, the necessary criminal intent, or the guilty knowledge of the defendant." [citation omitted]. *Id.*

In *United States v. Geter*, 274 F. App'x 805, 808-809 (11th Cir. 2008), the Eleventh Circuit applied the *Muscatell* holding to uncharged criminal conduct occurring prior to the time frame of a charged drug conspiracy. The indictment against the defendant alleged that he conspired with others to possess with intent to distribute heroin from October 21, 2004, through December 16, 2004. *Id.* at 807-808. At trial, the government introduced the testimony of a witness who claimed to have sold heroin for Geter on a daily basis from 1998 through October 2003, years before the charged conduct in the indictment. *Id.* This witness described Geter's drug trafficking organization and the modus operandi for the

8

organization's drug distribution activities, which were consistent with testimony regarding Geter's drug operations during the charged time period. *Id.*

Relying on *Muscatell*, the Eleventh Circuit determined that the break in time between Geter's prior, uncharged conduct and the charged offense did not render the witness's testimony extrinsic. *Id.* at 3. Rather, the court held that the testimony of Geter's earlier drug distribution activities was admissible intrinsic evidence "because it established the intent and motive behind the instant conspiracy, *demonstrated a pattern of ongoing conduct involving Geter and his coconspirators*, and was integral to the explanation of the circumstances surrounding the charged conspiracy." *Id.* (emphasis added).

In the case *sub judice*, the defendant's failure to register as a sex offender as alleged in the Indictment is based from the same events as his failure to update his sex offender registration when he absconded from Oregon and went to Cambodia as well as violate his probation by teaching at a school for children, *inter alia. see, e.g., United States v. Montes-Cardenas*, 746 F.2d 771, 780 (11th Cir. 1984)(affirming district court's decision to admit testimony regarding defendant's prior, uncharged importation of cocaine because these activities arose out of the same series of transactions as the charged offense of conspiracy to distribute cocaine).

Although Count One of the Indictment involves the defendant's failure to register as a sex offender in the Middle District of Florida on or about April 29, 2016, the defendant left the United States without updating his sex offender registration when he left Oregon in 2010. During an interview at the US Embassy

in Phnom Penh, the defendant expressed to federal agents that he wanted to renounce his US citizenship and that he did not want to return to the United States because he knew that there was an outstanding warrant for his arrest for violating his probation by absconding from Oregon and failing to update sex offender registration. The defendant also phoned his probation officer, with whom he had not had contact in six (6) years in order to have the arrest warrant lifted. Furthermore, the defendant's employment at a school with children and failure to notify his probation officer of his employment at a school for children and at the university violated his probation. Additionally, though the defendant did not have a *per se* restriction to his computer use, he did have restrictions to his computer use, however, by being in Cambodia and by being in Florida without having the authorities know where he was, the defendant had unrestrained access to computers in Cambodia and Florida.

Finally, his change of address from Cambodia to Florida without notifying his probation officer not only violated his probation in Oregon, but he violated federal law as well. As discussed *supra*, 42 USC § 16913(c) requires a sex offender to "not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry." When the defendant moved to Florida, he had three days to notify that he had changed his residence to Florida and that he was no longer employed teaching at the school for children and the university. *See* Nichols *v. United States*, 136 S. Ct. 1113,

1118-1119, 194 L. Ed. 2d 324 (2016). This evidence goes to the defendant's motive for failing to register in Florida. Knowing that there was an outstanding warrant for his arrest for failure to register as a sex offender in Oregon for his numerous probation violations, gives the defendant every reason to ignore his sex offender registration obligations when he came to Florida in April 2016.

      2. Evidence of Defendant's Sex Offender Registration and Subsequent Failure to Update his Registration are Necessary to Provide Context for the Charged Offenses.

Evidence is also "inextricably intertwined" if it is vital to putting the charges in context. *See United States v. McClean*, 138 F.3d 1398, 1404 (11th Cir. 1998). In the case *sub judice*, the charge relating to the defendant's failure to register does not tell the full story. The defendant's obligation to register a sex offender did not spontaneously develop once his plane landed in Florida in April 2016. The defendant's obligation to register as a sex offender started from his sex offender conviction in Oregon in 2010. Furthermore, the defendant's desire to not return to the United States developed from his departure and failure to update his sex offender registration in Oregon and his desire to be in close contact with children at the school for children where he worked and his other probation violations that he committed, which is the reason why he did not want to register when he came to Florida in April 2016. Particularly since as soon as he registered, authorities would be notified as to his whereabouts in Florida and could presumably chose to execute the arrest warrant and bring him back to Oregon.

With the introduction of this evidence, the jury gets the context of why the defendant would want to not come back to the United States. This understanding of these chain of events gives the context and reason why the defendant would not want to register as a sex offender because he did not want the authorities to know where he would be located to answer for his probation violations, especially since he confessed to his probation officer that he was overseas and that he wanted the warrant lifted. *See, e.g., United States v. Copeland*, 188 Fed. Appx. 928, 930 (11th Cir. 2006) (determining in case involving charge of possession with intent to distribute MDMA that co-defendant could testify about prior drug dealings with defendant to bring context to how their relationship developed, the co-defendant's drug dependency, and the reason the co-defendant became indebted to the defendant, thus spawning the instant charge). *See United States v. Cardenas*, 234 Fed. Appx. 892, 897 (11th Cir. 2007) (evidence of prior drug dealings was inextricably intertwined with charged conduct because it explained the relationship between the parties and why a witness turned to the defendant to distribute his new "product" line).

      3.    The Probative Value of the Intrinsic Evidence the Government Seeks to Offer is Not Substantially Outweighed by the Danger of Unfair Prejudice.

Although inextricably intertwined evidence is not subject to Rule 404(b), it must still satisfy the requirements of Federal Rule of Evidence 403. *Edouard*, 485 F.3d at 1344. Therefore, intrinsic evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. See Fed. R. Evid. 403. "[I]n a criminal trial[,] relevant evidence is inherently prejudicial; it is only

when unfair prejudice substantially outweighs probative value that [Rule 403] permits exclusion." *United States v. King*, 713 F.2d 627, 631 (11th Cir. 1983). The Eleventh Circuit Court of Appeals, recognizing that "[t]he major function of Rule 403 is limited to excluding matters of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect," has determined that Rule 403 should be used "sparingly." *United States v. Lehder-Rivas*, 955 F.2d 1510, 1516 (11th Cir. 1992) (citations and internal quotation marks omitted). "The balance under the Rule, therefore, should be struck in favor of admissibility." *United States v. Smith*, 459 F.3d 1276, 1295 (11th Cir. 2006). Still, any potential unfair prejudice caused by the admission of intrinsic evidence may be mitigated by a limiting instruction from the Court. *See, e.g., United States v. Goodwin*, 296 Fed. Appx. 727, 731 (11th Cir. 2008) (citation omitted).

Because the defendant's uncharged conduct is similar, if not identical, to the charged offense, the probative value of the defendant's uncharged conduct, i.e. failure to update his registration and probation violations, is not substantially outweighed by undue prejudice. Ultimately, the evidence the government seeks to introduce at trial will not inflame the jury because it is not different from what they will hear with respect to the charged conduct, i.e. that defendant did not register as a sex offender because he did not want to give up his unrestrictive lifestyle. *See United States v. Allen*, 274 F. App'x 811, 819-821 (11th Cir. 2008). So, evidence of the defendant's uncharged conduct will not evoke an irrational response from the jury. Furthermore, because the defendant's uncharged conduct occurred close in time to his charged offenses, the probative value of

this evidence is not undermined by the passage of time. *See generally Smith*, 122 F.3d at 1359; *United States v. Wright*, 164 Fed. Appx. 809, 814 (11th Cir. 2006).

> b. In the Alternative, if the Court determines that the Defendant's Sex Offender Registration and Subsequent Failure to Update his Registration are Extrinsic Evidence then that Evidence Should be Admitted Pursuant to Federal Rule Of Evidence 404(b)

The United States intends to introduce the above-referenced facts as intrinsic evidence because each of those prior acts is inextricably intertwined with the offense conduct alleged in this case. However, should the Court disagree with the analysis stated herein, all of the facts adduced above would also establish the defendant's motive, intent, plan, knowledge, absence of mistake, and/or modus operandi and would therefore be appropriate purposes for admissibility under Rule 404(b). Without confessing that this proffered evidence is subject to Rule 404(b), the United States gives this notice as a protective notice under the provisions of the applicable discovery order.

Rule 404 of the Federal Rule of Evidence provides that, subject to Rule 403, evidence of a prior crime or bad act is not admissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but is admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id*. To be admissible under Rule 404(b): (1) the evidence must be relevant to an issue other than the defendant's character, such as lack of accident; (2) there must be sufficient evidence for a jury to find that the defendant

committed the extrinsic act; and (3) the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice. *See United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1224 (11th Cir. 1993).

The United States gives notice under Rule 404(b) that it may also offer the following prior bad acts reflecting the Defendant's knowing failure to keep his registration updated, as discussed *supra* and *infra*: the defendant's conviction in the Multnomah Circuit Court, Multnomah County, Oregon, case number 09-01-30068, DA 2153456-1, for five Counts of violation of Oregon Statute § 163.686, encouraging child sexual abuse in the second degree, and evidence associated with this conviction wherein the defendant acknowledged his sex offender registration requirements. Although it is not prior bad act evidence, the United States also provides notice that it intends to introduce evidence of the Defendant's prior sex offender registration. Evidence pertaining to the prior registration failure, advisements, and registration success demonstrate the defendant's knowledge of the registration requirements and absence of mistake. They are, therefore, permissible under Rule 404(b).

The United States also provides notice that it may seek admission of evidence pertaining to the defendant's 128-day jail sentence in Oregon, his sentence to 3 years of probation with conditions including, without limitation, his violations of probation of the prohibition against contact with children, *inter alia*, not to frequent places such as schools, and limitations on how he can use digital devices, which he had unmonitored access to in Cambodia and Florida, and as

15

well as the defendant's absconding from his Oregon state probation when he left Oregon and went to Cambodia without updating his sex offender registration. This evidence demonstrates the Defendant's motive for failing to update his registration as required and explains why he absconded outside of the United States and why he declined to comply with his sex offender registration obligations when he came back to the United States from Cambodia, as discussed *supra*. This evidence would be offered to show the defendant's plan and modus operandi, and, therefore, it is offered for a permissible purpose under Rule 404(b).

Rule 404(b) should be analyzed with an inclusionary view of admission of the evidence. The inclusionary analysis for receiving 404(b) evidence has been adopted by the Eleventh Circuit. *See United States v. Perez-Tosta*, 36 F.3d 1552, 1562 (11th Cir. 1994). Applying this inclusionary rule and the proper purpose offered herein, the United States submits that all of the foregoing evidence is admissible.

Rule 403 of the Federal Rules of Evidence provides that " When Rule 404(b) evidence against a defendant is relevant, the court should admit it unless the evidence will cause undue prejudice within the meaning of Rule 403. Such evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice. *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978), *cert. denied*, 440 U.S. 920 (1979). "The application of Rule 403 should be sparing . . . . : 'Relevant evidence is inherently prejudicial but it is only

*unfair* prejudice, *substantially* outweighing probative value, which permits the exclusion of relevant matter under Rule 403.'" *United States v. Pirolli*, 673 F.2d 1200, 1203 (11th Cir. 1982) (footnote omitted) (quoting *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979)).

As the Eleventh Circuit stated in *United States v. Mills*:

> Relevant evidence is inherently prejudicial; but it is only <u>unfair</u> prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403. Unless trials are to be conducted on scenarios, on unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sale of its prejudicial effect.

704 F.2d 1553, 1560 (11th Cir. 1983) (quoting *McRae*).

To the extent that necessity is a factor, "the court should be mindful of the heavy burden the government bears to prove its case beyond a reasonable doubt and should not unduly restrict the government in the proof of its case." *United States v. Day*, 591 F.2d 861, 877 n.29 (D.C. Cir. 1978). *See also United States v. Beechum*, 582 F.2d at 914 n. 18. *United States v. Frick*, 588 F.2d 531, 538 (5th Cir. 1979). Admission of the evidence is not likely to confuse or mislead the jury. *See* Fed. R. Evid. 405. Admission of this evidence will not cause undue delay, waste time or be a needless presentation of cumulative evidence.

As stated *supra*, the evidence is extremely probative of the defendant's motive, opportunity, intent, plan, knowledge, identity, lack of mistake, and modus operandi. In weighing the probative value of this evidence against any "undue"

17

prejudicial effect to the defendant, this Court should consider the "differences between the charged and extrinsic offenses, their temporal remoteness and the government's need for the evidence to prove the intent." *Cardenas*, 895 F.2d at 1343. The trial court has broad discretion in evaluating admissibility, which is reviewable only for abuse. *United States v. Mitchell*, 666 F.2d 1385, 1390 (11th Cir. 1981), *cert. denied*, 457 U.S. 1124 (1982).

"The court's discretion to exclude evidence under Rule 403 is narrowly circumscribed. 'Rule 403 is an extraordinary remedy which should be used only sparingly since it permits the trial court to exclude concededly probative evidence.'" *United States v. Church*, 955 F.2d 688, 700 (11th Cir. 1992) (quoting *United States v. Norton*, 867 F.2d 1354, 1361 (11th Cir. 1989)).

### III. CONCLUSION

Therefore, the evidence as outlined above should be allowed in trial either as intrinsic evidence or as evidence of other crimes, wrongs or acts pursuant to Fed. R. Evid. 404(b) for the reasons stated above.

Respectfully submitted,

A. LEE BENTLEY, III
United States Attorney

By: *s/ Michael C. Baggé-Hernández*
MICHAEL C. BAGGÉ-HERNÁNDEZ
Assistant United States Attorney
Florida Bar No. 0051923
2110 First Street, Suite 3-137
Fort Myers, Florida 33901
Phone: (239) 461-2200
Fax: (239) 461-2219
Email: michael.c.bagge@usdoj.gov

**U.S. v. ERIC DAVID ERDMANN**         Case No. 2:16-cr-62-FtM-99MRM

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 24, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

G. Ellis Summers
ellis_summers@fd.org

                                              *s/ Michael C. Baggé-Hernández*
                                              MICHAEL C. BAGGÉ-HERNÁNDEZ
                                              Assistant United States Attorney