UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.                                                        Case No. 2:16-cr-62-FtM-99MRM

ERIC DAVID ERDMANN
a/k/a Eric Erdman
_____/

DEFENDANT'S RESPONSE TO UNITED STATES'
FIRST MOTION IN LIMINE TO ADMIT INTRINSIC ACT EVIDENCE NOT SUBJECT
TO FEDERAL RULE OF EVIDENCE 404(B) OR IN THE ALTERNATIVE,
GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE EVIDENCE OF OTHER
CRIMES, WRONGS OR ACTS PURSUANT TO FED. R. EVID. 404(B)

The Defendant, ERIC DAVID ERDMANN, by and through undersigned counsel, hereby

respectfully submits this Response to the United States' First Motion in Limine to Admit Intrinsic

Act Evidence Not Subject to Federal Rule of Evidence 404(b) or in the Alternative, Government's

Notice of Intent to Introduce Evidence of Other Crimes, Wrongs or Acts Pursuant to Fed. R. Evid.

404(b), and, in support, states as follows:

Background

The Government has filed its First Motion in Limine to Admit Intrinsic Act Evidence Not

Subject to Federal Rule of Evidence 404(b) or in the Alternative, Government's Notice of Intent

to Introduce Evidence of Other Crimes, Wrongs or Acts Pursuant to Fed. R. Evid. 404(b) with the

intent of introducing the following: (1) the defendant's conviction in the Multnomah Circuit Court,

Multnomah County, Oregon case number 09-01-30068, (2) evidence associated with this

conviction wherein the defendant acknowledged his sex offender registration requirements, (3)

Defendant's prior sex offender registration and evidence pertaining to the prior registration

failures, advisements, and his registration success, (4) the defendant's 128-day jail sentence in

Oregon, (5) his sentence to 3 years of probation with conditions and violations of those conditions, and (6) his un-monitored possession of digital devices in Cambodia and in Florida. *See* Governments' First Motion in Limine, (Doc. 73, pg 2-3).

Mr. Erdmann would concede that (1) evidence associated with his conviction wherein the defendant acknowledged his sex offender registration requirements, and (2) Defendant's prior sex offender registration and evidence pertaining to the prior registration are admissible.

The Government's arguments fail with respect to (1) the defendant's conviction in the Multnomah Circuit Court, Multnomah County, Oregon case number 09-01-30068;  (2) his prior registration failure, if any, in Oregon; (3) the defendant's 128-day jail sentence in Oregon; (4) his sentence to 3 years of probation with conditions and violations of those conditions; and (5) his un-monitored possession of digital devices in Cambodia and in Florida.  Such evidence should be deemed inadmissible.

I.    **The Defendant Has Offered to the Government to Stipulate that His Prior Conviction in Multnomah Circuit Court is a Sex Offense Requiring Registration; therefore pursuant to *Old Chief v. United States*, 117 S.Ct. 653, 655 (1997), the Government is Precluded from Introducing into Evidence at trial A Record of Conviction from Multnomah County.**

In *Old Chief v. United States*, 117 S.Ct. 653, 655 (1997), the United States Supreme Court held that if the defendant is willing to stipulate to his status as a felon, then Rule 403 of the Federal Rules of Evidence precludes the Government from introducing into evidence at trial a record of conviction (including title and factual basis) based on the risk of unfair prejudice "substantially outweighing the discounted probative value of conviction."   Although *Old Chief* involves a conviction for Assault with a Dangerous Weapon and not a sex offense, logical reasoning leads to the conclusion that a sex offense—one of the crimes that has the greatest inherent risk of prejudice—should be treated the same as a violent crime.  *See id.* at 647, 655.

On multiple occasions, Defense Counsel has offered to the Government to stipulate that Mr. Erdmann's prior conviction in Multnomah County Circuit Court is a sex offense requiring registration. The stipulation would satisfy the first element of Title 18, United States Code, Section 2250(a), and relieve the Government of having to prove that element. *See id.* at 653, 655. Because of *Old Chief*, the Government must agree to Mr. Erdmann's offered stipulation. *See id.* at 655. Otherwise, the introduction of the conviction would unfairly prejudice Mr. Erdmann, which would substantially outweigh the probative value of the conviction. *See* Fed. R. Evid. 403.

For the foregoing reasons, the Government's request to introduce Mr. Erdmann's five convictions for encouraging sexual abuse in the second degree from Multnomah Circuit Court, Multnomah County, Oregon, case number 09—1-30068, DA 2153456-1, should be denied. The Government should be precluded from mentioning the title or factual basis of the prior convictions at trial (including, without limitation, opening, examinations of witnesses, and closing arguments), and such titles or factual basis should be excluded from the reading of the indictment to the jury. (Doc. 1, pg. 1).

## II. The Evidence that the Government Desires to Introduce Relating to Any Failure to Register in Oregon, Probation, and Terms of Probation is Not Intrinsic Evidence Inextricably Intertwined with the Indicted Offense of Failing to Register and Update a Registration as Required by the Sex Offender Registration and Notification Act.

The United States Supreme Court held in *Nichols v. United States*, 136 S.Ct. 1113, 1118-19 (2016), that under Federal law, a sex offender does not have to update their registration in a former State of residence. Specifically, Mr. Nichols had moved from Kansas to the Philippines. *See id.* at 1115. The United States Supreme Court found his move to the Philippines to be lawful under 18 U.S.C. § 2250. *See id.* at 1118-19. The Philippines was not a jurisdiction where Mr. Nichols had to register. *See id.* at 1117. Similarly, Mr. Erdmann moved from Oregon to the Kingdom of

Cambodia in December 2010.  Pursuant to *Nichols*, Mr. Erdmann had no obligation to register in the Kingdom of Cambodia nor had he committed a crime under 18 U.S.C. § 2250 by failing to update his registry in Oregon.  *See id.* at 1117-19.  Mr. Erdmann may have committed a State Probation violation in 2010 and possibly a State Registration offense when he moved to the Kingdom of Cambodia, but he did not commit any Federal crime.  *See id.*

The Government is attempting to unjustifiably commingle Mr. Erdmann's alleged 2010 State Registration offense for failing to notify Oregon of a change in residence and alleged State Probation violations beginning in 2010 with an alleged 2016 Federal crime by introducing irrelevant and prejudicial evidence (and skirt the notice requirements set forth in the scheduling order for Rule 404(b) evidence).  Essentially, the problem is that the Government is attempting to mix apples and oranges—namely distinct State and Federal charges.  The Federal Government could not prosecute the alleged State registration offense and alleged State Probation violations because Mr. Erdmann's move to the Kingdom of Cambodia was not a Federal crime nor can the Federal Government prosecute the probation violations of a different sovereign.  *See id.* at 1118-19.  As the State and Federal offenses are distinct crimes—to be prosecuted by different sovereigns—they are not inextricably intertwined.  Nothing makes this point more clearly than the cases cited by the Government.

1. **The Cases Cited by the Government Exclusively Involve Uncharged and Charged Federal Crimes.**

First, the Government cites *United States v. Muscatell*, 42 F.3d 627, 630 (11th Cir. 1995), in which the Government provided evidence of uncharged, but similar, illegal transactions to the charged offenses.  Namely, the uncharged offenses in *Muscatell* included a property appraiser who provided an illegally inflated appraisal, a straw purchaser who submitted fraudulent loans, and a broker who represented buyers in similar uncharged illegal schemes before and after the charged

4

offenses. *See id.* at 629.  All of these illegal acts were similar to the charged scheme. *See id.*  What is instructive from *Muscatell* is that the uncharged events <u>also</u> constituted Federal crimes and were part of the same scheme.

Second, the Government cites *United States v. Geter*, 274 F. App'x 805 (11th Cir. 2008), in which the Government states that "the Eleventh Circuit applied the *Muscatell* holding to uncharged criminal conduct occurring prior to the time frame of a charged drug conspiracy."  *See United States' First Motion in Limine*, (Doc. 73, pg. 8).  In *Geter*, the Government introduced evidence of Mr. Geter's prior purchases of heroin years earlier.  *Geter*, 274 F. App'x at 807-808.  Similar to *Muscatell*, Mr. Geter was engaged in <u>Federal crimes</u> similar to the offenses indicted.  *See id.*  Unlike *Geter*, Mr. Erdmann's move to the Kingdom of Cambodia does not constitute a Federal crime, and, thus, does not constitute a pattern of ongoing illegal Federal conduct.  *See Geter,* 274 F. App'x at 808.

Third, the Government cites *United States v. Montes-Cardenas*, 746 F.2d 771, 780 (11th Cir. 1984), in which prior, uncharged cocaine importation crimes were introduced into evidence because the prior, uncharged crimes arose out of the same series of transactions as the charged offense of conspiracy to distribute cocaine.  Once again, the evidence deemed intrinsic in *Montes-Cardenas* constituted uncharged Federal crimes which arose out of the same transaction.

Fourth, the Government cites *United States v. Copeland*, 188 Fed. Appx. 928, 930 (11th Cir. 2006), in which prior, uncharged allegations of drug dealing were admissible as evidence in Mr. Copeland's current trial for possession with intent to distribute MDMA.  The Government again cites to a case where the prior, uncharged crimes are <u>Federal </u>crimes, similar to the charged offense.  Significantly, the charged offense and the uncharged offenses involve a pattern of crimes that can be prosecuted by the same sovereign.  *Id.*

And finally, the Government cites *United States v. Cardenas*, 234 Fed. Appx. 892, 897 (11th Cir. 2007), which involved the introduction of the prior, uncharged distribution of cocaine in a methylenedioxymethamphetamine ("MDMA") distribution case. Almost identical to *Geter*, *Montes-Cardenas*, and *Copeland*, the uncharged conduct involved a Federal crime—the sale of illegal narcotics.

   **2.** **The Uncharged State Registration Offense and Alleged State Probation Violations Did Not Arise Out of the Same Transaction, Nor Are they Necessary to Complete the Story, Nor Are They Inextricably Intertwined with the Evidence of the Alleged 2016 Federal Registration Offense.**

The 11th Circuit's test for whether evidence is intrinsic and falls outside the scope of Federal Rules of Evidence 404(b), is set forth in *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007), which states the following:

   "evidence of criminal activity other than the charged offense is *not* "extrinsic" under Rule 404(b), and thus falls outside the scope of Rule when it is '(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense."

None of the three intrinsic evidence exceptions apply to the evidence regarding the alleged 2010 State Registration offense and alleged State Probation violations.

First, the alleged 2010 State Registration offense (failure to update the Oregon Registry) and alleged State Probation violations could not have arisen out of the same or a series of transactions as the charged offense because Mr. Erdmann's move to the Kingdom of Cambodia and his activities there did not constitute a Federal crime. *See Nichols*, 136 S.Ct. at 1118-19. It is one thing to say that drug transactions—all illegal under Federal law—arose out of a series of transactions. *Geter*, 274 F. App'x at 807-808; *Montes-Cardenas*, 746 F.2d 780; *Copeland*, 188 Fed. Appx. at 930; *Cardenas*, 234 Fed. Appx. at 897. It is entirely different to say that activities

that are not illegal under Federal law arose out of the same transaction or series of transactions as the Federally charged offense. *See Nichols*, 136 S.Ct. at 1118-19. The alleged 2010 State Registration offense and alleged State Probation violations cannot be prosecuted by the Government—a cavernous distinction. Moreover, Mr. Erdmann moved to the Kingdom of Cambodia in approximately December 2010. Mr. Erdmann did not return to the United States until April 2016. An alleged 2010 State Registration offense and alleged State Probation violations beginning in 2010 and an alleged Federal crime from 2016 are distinct and separate in time and nature.

Second, the alleged State Registration offense and alleged State probation violations are not necessary to complete the story of the crime nor are they inextricably intertwined with the evidence regarding the charged offense. The elements of the offense are as follows: (1) that the defendant was required to register under the Sex Offender Registration and Notification Act; (2) that the defendant traveled in foreign commerce; and (3) that the defendant knowingly failed to register and keep a current registration as required by the Sex Offender Registration and Notification Act. 18 U.S.C. § 2250(a). Not one of these elements would need any evidence relating to an alleged 2010 State Registration violation or relating to alleged State Probation violations to explain a failure to register as a sex offender in April or May of 2016 in Florida. The story of the alleged crime begins on or about April 28, 2016 when Mr. Erdmann lands in the United States, and his Federal duty to register attaches. (Doc. 1, pg. 2). The Government writes that "[t]he defendant's obligation to register a (sic) sex offender did not spontaneously develop once his plane landed in Florida in April 2016." Government's First Motion in Limine, (Doc. 73, pg. 11). The Government neglects to point out that his <u>Federal</u> obligation to register did arise on that date. *Nichols*, 136 S.Ct. at 1118-19. He had no Federal obligation to register in the Kingdom of Cambodia nor did he have a Federal obligation to update his registry in Oregon upon his departure. *See id.*

The Government further provides that the alleged 2010 State Registration violation and alleged State Probation violations are necessary to provide "context" that Mr. Erdmann desired to avoid authorities knowing he was in Florida. *See* Government's First Motion in Limine, (Doc. 73, pg. 11). The Government fails to mention that Mr. Erdmann <u>passed through customs with a special 3 day passport provided to him by the United States Embassy to return to the United States after his passport had been revoked by the United States on or about April 8, 2016</u>. The "authorities" knew Mr. Erdmann had returned to the United States because the United States facilitated and participated in the planning of his return. Mr. Erdmann had communicated with the State Department in the five weeks leading up to his return to the United States, including speaking to his Oregon Probation Officer. The Government is trying to make the alleged 2010 State Registration violation and alleged State Probation violations part of the story—to prejudice the jury. The elements of 18 U.S.C. § 2250, the dates on the indictment relating to the charge, the fact that Mr. Erdmann did not violate Federal law in traveling to the Kingdom of Cambodia, and the fact that the Government worked collectively with Mr. Erdmann in assisting him to return to the United States, refute the Government's claim that the alleged 2010 State Registration violation and the alleged State Probation violations are either necessary to complete the story or inextricably intertwined with the charged offense. The evidence offered by the Government is extrinsic evidence—requiring a 404(b) notice.

### III. Mr. Erdmann's State Jail Sentence and Three Year Term of Probation Are Irrelevant at Trial and Unfairly Prejudicial and Should Be Excluded Pursuant to Federal Rule of Evidence 401, 402 and 403.

Rule 401 states that:

> "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

Rule 402 states that:

"[r]elevant evidence is admissible unless any of the following provides otherwise:
● the United States Constitution;
● a federal statute;
● these rules; or
● other rules prescribed by the Supreme Court.
Irrelevant evidence is not admissible."

There is no element of the offense of Failure to Register as a Sex Offender that even marginally relates to a prior State prison sentence or State probation sentence. First, Mr. Erdmann will be stipulating that he is a sex offender and is required to register. *See* 18 U.S.C. § 2250(a)(1). His prior jail sentence and probation sentence has no bearing on whether he traveled in foreign commerce. *See* 18 U.S.C. § 2250(a)(2). And finally, his prior jail sentence and probation sentence do not relate to whether he knew that he had to register and keep his registration current. *See* 18 U.S.C. § 2250(a)(3). Quite simply, his State jail sentence and probation sentence has <u>no</u> tendency to make any fact more or less probable that is of consequence to a finding of his guilt or innocence. His State jail sentence and probation sentence are irrelevant. Their only value is to prejudice the jury.

The Government suggests that this evidence would be offered to show plan or modus operandi. *See* Government's First Motion in Limine, (Doc. 73, pgs. 15-16). These arguments are dead on arrival.

First, Federal case law makes it clear that to be a plan and an exception under Rule 404(b), there must be a scheme to commit some sort of crime, even if the boundaries of the scheme are unclear. *See United States v. Orr*, 825 F.2d 1537, 1543 (11th Cir. 1987) (evidence relevant to establish scheme to steal cars); *United States v. Potts*, 840 F.2d 368, 372 (7th Cir. 1987) (in prosecution for conspiracy to alter postal money orders, evidence of drug-smuggling admissible as interrelated); *United States v. Rohrer*, 708 F.2d 429, 435 (9th Cir. 1983) (in drug prosecution, scale and baggies seized from defendant's home 15 months and 2 ½ years after charged offenses

were admissible to show continuing conspiracy).  Past jail time and a term of probation is not evidence of a scheme or plan to commit a crime.  They are historical facts.  Therefore, the exception under Rule 404(b) for a plan does not apply.

Second, the Government claims that his past State jail sentence and probation sentence are evidence of a modus operandi.  *See* Government's First Motion in Limine, (Doc. 73, pgs. 15-16).  Modus operandi is when the evidence is so distinctive that it can be seen as a signature crime.  *See United States v. Mack*, 258 F.3d 548, 553-554 (6th Cir. 2001) (evidence of subsequent, uncharged bank robbery was admissible to show identity, based on "signature" modus operandi).  There is nothing that makes his past jail sentence or probation sentence his signature crime, or that his desire to stay out of jail or in compliance with probation a distinctive crime. Mr. Erdmann's past jail time and term of probation do not establish a modus operandi.

Finally, Rule 403 states that:

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Mr. Erdmann's past jail time and term of probation has little, if any, relevant value.  The length of his stay in jail and term of probation would likely substantially prejudice a juror.  Most jurors have never been to jail, not to mention, 128 days in jail.  Since the evidence has so little relevant value, if any, the probative value of each is substantially outweighed by the danger of unfair prejudice.  Mr. Erdmann's jail sentence and probation term should be excluded under Federal Rules of Evidence 401, 402, and 403.

**IV.** **Mr. Erdmann's Alleged Failure to Update His Registry in Oregon and any Resulting Probation Violation is not Relevant and is Prejudicial and Should Be Excluded Pursuant to Federal Rule of Evidence 401, 402 and 403.**

Mr. Erdmann is alleged to have failed to update his registry in Oregon when he moved to the Kingdom of Cambodia—which is not a Federal crime. *Nichols*, 136 S.Ct. at 1118-19. As earlier discussed, this evidence is not intrinsic, but rather is extrinsic evidence. If the Court reached the opposite conclusion and found the evidence to be intrinsic, it still would be excluded pursuant to Federal Rules of Evidence 401, 402, and 403. With respect to a Rule 404(b) analysis, the Eleventh Circuit holds that "such evidence is admissible if (1) it is relevant to an issue other than the defendant's character; (2) it is established by sufficient proof to permit a jury to find that the defendant committed the extrinsic act; and (3) its probative value is not substantially outweighed by its undue prejudice. *United States v. Allen*, 274 Fed. App. 811, 819 (2008).

The first issue is relevance pursuant to Rules 401 and 402. Fed. R. Evid. 401 and 402. Because it is not a violation of Federal law to move from Oregon to Cambodia without updating a registry in Oregon or registering in Cambodia, it is difficult to see how failing to update a registry in a Federal case is relevant. *See Nichols*, 136 S.Ct. at 1118-19. By registering in Oregon, Mr. Erdmann acknowledged that he <u>knew</u> that he had to register. By failing to update his Oregon registry—not a Federal crime—Mr. Erdmann did nothing to prove or disprove his <u>knowledge</u> that he had to register.

The Government relies on plan and modus operandi for its basis for admission under Rule 404(b). *See* Government's First Motion in Limine, (Doc. 73, pg. 15-16). The Government argues that Mr. Erdmann's past failure to update his Oregon registry is his basis for not wanting to register in Florida because it would alert the authorities of his presence. *See id.* at 11-12.

11

First, the Government's argument fails because it was the Government's and Mr. Erdmann's plan that Mr. Erdmann return to the United States.  After revoking his passport because of the warrant out of Oregon, the Government provided him with the 3-day visa to return to the United States after approximately 5 weeks of communications between Mr. Erdmann, the Government, and even his Oregon probation officer.  The Government passed him through customs.  Mr. Erdmann could not have gotten to Florida without the Government's assistance.  After all of that help from the Government and planning with the Government, it is irrational to argue that Mr. Erdmann thought he was secretly in the country.

Second, the Government also has argued that his failure to update his registry is a "modus operandi."  *See* Government's First Motion in Limine, (Doc. 73, pg. 16). Once again, failure to update a registry—which was legal under Federal law—is in no way a distinctive crime.  *See United States v. Mack*, 258 F.3d 548, 553-554 (6th Cir. 2001).  Mr. Erdmann isn't a burglar who always scales a wall before breaking in or who always wears a distinctive mask in committing a robbery.  There is nothing "signature" about the alleged failure to register.  The Government's argument misses the mark.  In sum, his failure to update his registry in Oregon was legal under Federal law, and has no bearing on his guilt or innocence pursuant to 18 U.S.C. § 2250.  Evidence of his failure to update his registry and any related State probation violation is irrelevant.  Fed. R. Evid. 401 and 402.

The second issue pursuant to *Allen* is whether the Government established sufficient proof to prove the extrinsic act.  That issue will not be ripe until trial, if the evidence is deemed admissible.

The third issue is whether inclusion of evidence of his failure to update his Oregon registry would violate Rule 403 of the Federal Rules of Evidence.  Evidence may be excluded if "its probative value is substantially outweighed by a danger" of unfair prejudice.  Fed. R. Evid. 403.

As a result, logic dictates that the lesser the probative value, the greater the chance that the probative value will be substantially outweighed by unfair prejudice.  Because Mr. Erdmann's failure to update his Oregon registry upon leaving the country was not a Federal crime and Mr. Erdmann and the Government worked collectively for Mr. Erdmann's entry into the United States, the probative value, if any, of Mr. Erdmann's failure to update his registry in Oregon is extremely slight.  There is a substantial danger of unfair prejudice from the jury hearing about a 2010 act which the United States Supreme Court has recently ruled was not a Federal crime.  *See Nichols*, 136 S.Ct. at 1118-19.  Under the circumstances, the danger of unfair prejudice substantially outweighs any probative value.  Fed. R. Evid. 403.

### V.      **Mr. Erdmann's Alleged Probation Violation relating to Working at a School With Children is Irrelevant, Unfairly Prejudicial, and Likely Involves Hearsay and Should Be Excluded Pursuant to Federal Rule of Evidence 401, 402, and 403.**

The Government's allegation that Mr. Erdmann violated his probation by working at a school with children is also irrelevant and overly prejudicial.  This evidence also should be deemed extrinsic, but if deemed intrinsic by the Court, it should be excluded for the same reasons.

The Government states that plan and modus operandi are its basis for admission of the evidence relating to the school under Rule 404(b). *See* Government's First Motion in Limine, (Doc. 73, pg. 15-16).  Neither satisfies the test set forth in *Allen*.  *Allen*, 274 Fed. App. at 819.  First, evidence of Mr. Erdmann teaching at a school—although relevant to a State Probation violation—has no bearing on any of the elements of 18 U.S.C. § 2250.  Evidence relating to the school doesn't support the fact that Mr. Erdmann was required to register, that he moved in interstate commerce, or that he knew that he had a duty to register upon arrival in Florida.  *See* 18 U.S.C. § 2250. This evidence provides no support for any of these elements.  Moreover, the Government's argument for plan fails for the same reasons as before mentioned relating to his jail sentence, probation

sentence, and failure to register—namely the Government worked with Mr. Erdmann to return him to the United States.  Based on the circumstances of his return to the United States, the authorities were aware of and instrumental in his plan to return to the United States.

The Government is again on a frolic and detour with its argument that his teaching at a school was his "modus operandi" which requires its admission under Rule 404(b).  *See* Government's First Motion in Limine, (Doc. 73, pg. 15-16).  There must be a *pattern* which establishes the signature nature leading to identification of a unique defendant.  *See United States v. Sliker*, 751 F.2d 477, 487 (2d Cir. 1984) (characteristics of prior crime and charged crime sufficiently idiosyncratic to permit fair inference that they were part of pattern); *United States v. Guerrero*, 169 F.3d 933, 939 (5th Cir. 1999) (other bank robberies were admissible because of signature quality of acts). His teaching at a school does not create a *pattern* which identifies him as the person failing to register.  His teaching at a Cambodian school played no part in his identification, and therefore, is not admissible as a modus operandi.

The second factor under *Allen* is "sufficient proof to permit a jury to find that the defendant committed the extrinsic act."  *Allen*, 274 Fed. App. at 819.  The Government presumably will have to have a witness who will testify that Mr. Erdmann was teaching at a school with children.  If that witness does not have first-hand knowledge of Mr. Erdmann teaching children, then such evidence will not be admissible as hearsay pursuant to Rules 801 and 802, and will breach the second prong of *Allen*.

The third factor under *Allen* is Rule 403—whether the probative value is substantially outweighed by unfair prejudice.  *Allen*, 274 Fed. App. at 819; Fed R. Evid. 403.  Once again, logic dictates that the lesser amount of probative value, the greater chance that the probative value is substantially outweighed by unfair prejudice.  The relevance relating to the alleged probation

violation regarding Mr. Erdmann teaching at a school is scant, if any at all. The Government cites *United States v. Lehder-Rivas*, 955 F.2d 1510, 1516 (11th Cir. 1992), which states "[t]he major function of Rule 403 is limited to excluding matters of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." Any testimony regarding Mr. Erdmann teaching at a school fits the description provided by *Lehder-Rivas*—namely that the true purpose is the prejudicial effect on the jury. The whole purpose of the United States Supreme Court's ruling in *Old Chief*, 117 S.Ct. at 655, is to prevent the jury from being prejudiced by the name and factual basis of the crime. The United States Supreme Court recognizes that a past crime can have a highly prejudicial effect on a jury that can substantially outweigh any probative value. Logically, letting the jury know that Mr. Erdmann has a probation restriction against being around or teaching *children* will have the exact same effect. The jury may not know the specific sex crime that Mr. Erdmann was convicted of, but they will know the prior offense *involves children*. The jury may conclude that Mr. Erdmann was previously convicted of a contact offense on a child. Further, the jury may punish Mr. Erdmann because his prior conviction related to children. For obvious reasons, normal, reasonable people have a strong emotional desire to protect children. Any evidence relating to children will have a powerful emotional effect—which will likely cause unfair prejudice.

In short, the jury will be at risk of the same high degree of prejudice that *Old Chief* was trying to avoid if the jury hears that Mr. Erdmann had a probation restricting him from being around children or was prevented from teaching children. *See Old Chief*, 117 S.Ct. at 655. If the jury cannot know the specific type of crime of conviction because of the danger of unfair prejudice, then logic dictates that specific probation terms such as avoiding children also provide a danger of unfair prejudice that substantially outweighs any probative value. *See Old Chief*, 117 S.Ct. at 655.

The highly prejudicial nature of allowing the jury to know that teaching children or being around children is a probation violation substantially outweighs the scant, if any, probative value of Mr. Erdmann's alleged plan to evade authorities—especially in light of the Government's extensive role in his return to the United States.

## VI.   Mr. Erdmann's Alleged Use of Unrestricted Internet (which is a misleading description) is Irrelevant and Unfairly Prejudicial and Should Be Excluded Pursuant to Federal Rules of Evidence 401, 402 and 403.

The Government's allegation that Mr. Erdmann violated his terms of probation by using unrestricted rather than restricted internet use also should be excluded as irrelevant and unfairly prejudicial.[1]  Most importantly, the Government's attempt to prejudice the jury is apparent by its description of the alleged probation violation as "unrestricted internet access."  Actually, the terms of probation, attached as Exhibit "A", provide that Mr. Erdmann could "not possess or use any type of sexually explicit material including but not limited to printed, photographic, video, electronic or recorded materials that may be used for the purpose of deviant sexual arousal, nor frequent establishments or web sites associated with the sex industry."  In short, his internet access was not restricted.  His access to prurient materials was restricted.  For prejudicial reasons, discussed below, the Government is focusing the jury on the "internet."

The Government again argues that plan and modus operandi are its basis for admission of the evidence relating to the unrestricted internet use (better described as restriction on prurient materials)[2] under Rule 404(b). *See* Government's First Motion in Limine, (Doc. 73, pg. 15-16). Neither satisfies the test set forth in *Allen*.  *Allen*, 274 Fed. App. at 819.

---

[1] This evidence also should be deemed extrinsic, but if deemed intrinsic by the Court, it should be excluded for the same reasons.

[2] To avoid confusion, Defense Counsel will primarily refer to the restriction on prurient materials as a restriction on internet access.  Defense Counsel does not agree with this description, but prefers to avoid any confusion between what the Government is trying to admit into evidence and what the Defendant is trying to exclude.

First, the unrestricted versus restricted internet use has no bearing on any of the elements of 18 U.S.C. § 2250.  Evidence relating to unrestricted internet access does not support the fact that Mr. Erdmann was required to register, that he moved in interstate commerce, or that he knew that he had a duty to register upon arrival in Florida.  *See* 18 U.S.C. § 2250.  The Government once again is claiming that the unrestricted internet access relates to Mr. Erdmann's plan and modus operandi.  *See* Government's First Motion in Limine, (Doc. 73, pg. 15-16).  Neither provide any relevance for the same reasons relating to his prior sentence, his failure to update his registry in Oregon, and any allegations regarding teaching at a school.  Namely, the United States authorities extensively assisted Mr. Erdmann in reentering the United States.  Mr. Erdmann wouldn't be in the United States, but for the United States Government.  Mr. Erdmann and the United States' plan was for him to travel to Florida.  To then argue that Mr. Erdmann's plan was to not register so that the authorities would not know he was in the country is frivolous.

Moreover, the Government argues that his use of "unrestricted internet" access is part of a modus operandi.  *See* Government's First Motion in Limine, (Doc. 73, pg. 15-16).  However, Mr. Erdmann's identification for failing to register is not based on his distinctive "unrestricted use of the internet."  *See United States v. Sliker*, 751 F.2d 477, 487 (2d Cir. 1984) (characteristics of prior crime and charged crime sufficiently idiosyncratic to permit fair inference that they were part of pattern); *United States v. Guerrero*, 169 F.3d 933, 939 (5th Cir. 1999) (other bank robberies were admissible because of signature quality of acts).  Quite simply, Mr. Erdmann's internet use does not fit the requirements for a "modus operandi."  This argument by the Government should be rejected.

Second, Defense Counsel has not received any discovery that shows Mr. Erdmann violated this terms of probation relating to a prurient website or prurient video.  Access to the internet is

not a violation. *See* <u>Exhibit "A"</u>.  He has to be accessing prurient websites or videos.  Without any discovery showing Mr. Erdmann using prurient websites or videos, it appears that the Government will be unable to satisfy the second prong of *Allen.*

And finally, the third factor under *Allen* is Rule 403—whether the probative value is substantially outweighed by unfair prejudice.  *Allen*, 274 Fed. App. at 819; Fed R. Evid. 403.  The unrestricted use of the internet (or "prurient materials"), if relevant, is barely relevant.   In comparison, the evidence of a probation violation for "unrestricted use of the internet" or "prurient materials" is highly prejudicial.  Most importantly, many people are familiar with the crime of child pornography.  Many people are aware that this type of crime is frequently committed on the internet.  It is no accident that the Government has cherry picked the internet out of the possible options from the probation restriction relating to prurient materials.  The Government wants the jury to make that leap.  There is a high danger that the jury may be able to guess the underlying offense based on this description of the probation restriction.

The United States Supreme Court has found that the name and factual basis of a prior conviction violate Rule 403.  *See Old Chief*, 117 S.Ct. at 655.  A high danger of tipping the jury off to what the underlying conviction has the same danger of unfair prejudice.  A probation restriction has the same risk of unfair prejudice as the name of the crime.  In light of the high risk of unfairly prejudicing the jury, similar to *Old Chief*, and the scant relevance of the unrestricted use of the internet or prurient materials, the only conclusion can be that the probative value is substantially outweighed by the danger of unfair prejudice.

**VII.    The Government Failed to Provide a Timely Rule 404(b) Notice As Required by the Court's Scheduling Order.**

On May 26, 2016, United States Magistrate Judge Carol Mirando issued the Criminal Scheduling Order in Mr. Erdmann's case.  Paragraph I, titled Rule 404(b) Evidence of the Criminal Scheduling Order states as follows:

> "Within **fourteen (14)** days from the date of this Order, the government shall disclose to the defendant in writing the general nature of evidence of other crimes, wrongs, or acts by the defendant that the government intends to introduce at trial pursuant to Fed. R. Evid. 404(b), as well as the general purpose of the evidence (*e.g.*., proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident).  The government's written disclosure shall characterize the defendant's specific prior conduct to a degree that fairly apprizes the defendant of its general nature.  Absent good cause shown, failure to make this disclosure will bar the use at trial of any such evidence.  Within the time frame established in ¶ II (B) of this Order, the defendant shall file a motion in limine stating that any objection to the introduction of the Rule 404(b) evidence.

> (Doc. 9, pg. 4).

Rule 404(b) of the Federal Rules of Evidence provides that "…the prosecutor must: (A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and (B) do so before trial—or during trial if the court, for good cause, excuses lack of pretrial notice."  Fed. R. Evid. 404(b).  The Government filed its Rule 404(b) notice on February 24, 2017—which is 273 days after the issuance of Judge Mirando's scheduling order.  There is no question that the Government is grossly tardy in its filing.  Trial is set for March 21, 2017.  Most importantly, the Government's filing prejudices Mr. Erdmann, and impairs his right to a fair trial in violation of his Fifth Amendment Right to Due Process.

The Eleventh Circuit has established a three factor test to determine if a 404(b) notice is reasonable.  First, "[w]hen the Government, through timely preparation for trial, could have learned of the availability of the [evidence]; (2) [t]he extent of prejudice to the opponent of the

evidence from a lack of time to prepare; and (3) [h]ow significant the evidence is to the prosecution's case." *United States v. Ceja*, 543 Fed. Appx. 948, 955 (11th Cir. 2013).

Applying the first factor of the Eleventh Circuit's test, the Government has known about all of this evidence since the beginning of the case. *See id.* Namely, the Government knew in May 2016 that Mr. Erdmann was on probation in Oregon. The Government knew in May 2016 that Mr. Erdmann left without notifying the State of Oregon and traveled to Cambodia. Per discovery, the Government knew in May 2016 that Mr. Erdmann was teaching at a University and that he appeared to have internet access. All of this information was available to the Government at the time of the Scheduling Order, yet the Government failed to file its 404(b) notice.

Applying the second factor, the Defendant is substantially prejudiced because he cannot possibly investigate in Cambodia, Oregon, and in Florida in the next 18 days prior to trial. *See id.* First, the Defendant has now learned that the Government intends to elicit testimony (subject to Mr. Erdmann's objections) that Mr. Erdmann worked at a school teaching children. Presumably, the Government will have to bring in at least one witness from Cambodia to testify to Mr. Erdmann's employment as a teacher and the ages of Mr. Erdmann's students. With 18 days until trial, the Government has essentially left Mr. Erdmann with no ability to investigate these allegations, particularly those in Cambodia.

Second, the Defendant has now learned that the Government intends to introduce evidence of Mr. Erdmann's alleged failure to register in Oregon from 2010 and subsequent probation violations. Defendant now has to research and investigate these alleged violations. On February 27, 2017, the Government provided Defendant with additional discovery which includes alleged statements to Mr. Erdmann's probation officer by the Defendant regarding his leaving of Oregon in 2010. Defense Counsel now has to investigate these allegations and these alleged statements in

the Portland, Oregon area. The distance and timing of these disclosures place Defense Counsel at a distinct disadvantage, and impair Mr. Erdmann's Constitutional right to a fair trial.

Third, the Defendant has just learned that the Government intends to make an issue of Mr. Erdmann's use of digital devices (or prurient materials possibly found on digital devices). Defense Counsel will now have to investigate any possible prurient materials on digital devices (or in any form) in Cambodia and Florida. This investigation will take away from crucial trial preparation, and prejudice Mr. Erdmann's right to a fair trial.

And applying the third factor, none of this evidence is significant to the Government's case, if even relevant. *See id.* None of this evidence relates to any of the elements of the offense. The Government will easily be able to prove the Defendant's knowledge of his requirement to register through the original paperwork advising him of the necessity to register as a sex offender and his original registration in Oregon. The alleged 2010 Oregon Failure to register and alleged probation violations are of little, if any significance to the Government's case.

In summary, there is no question that the Government violated the Scheduling order. The Government is approximately 259 days late with its filing of a Rule 404(b) Notice. The Government's tardiness has prejudiced the Defendant. The Defendant now will have to engage (or forgo) investigation in Cambodia, Oregon, and Florida with precious few days until trial. Applying the Eleventh Circuit's test, the evidence relating to the Rule 404(b) notice should be excluded at trial. *See id.*

**WHEREFORE**, pursuant to Fed. R. Evid. 401, 402, 403, and 404(b), Mr. Erdmann respectfully moves that the Court exclude all evidence relating to (1) the defendant's conviction in the Multnomah Circuit Court, Multnomah County, Oregon case number 09-01-30068; (2) his prior registration failure, if any, in Oregon; (3) the defendant's 128-day jail sentence in Oregon;

(4) his sentence to 3 years of probation with conditions and violations of those conditions; and (5) his un-monitored possession of any prurient materials on digital devices in Cambodia and in Florida.

Respectfully submitted,
Donna L. Elm
Federal Defender

/s/ G. Ellis Summers, Jr.
G. Ellis Summers, Jr.
Florida Bar No.0815691
Assistant Federal Defender
1514 Broadway, Suite 301
Ft. Myers, Florida 33901
Telephone: 239-334-0397
Fax:  239-334-4109
E-Mail: ellis_summers@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 3rd day of March, 2017 the foregoing was electronically filed with the Clerk of Court and a copy will be sent electronically to Michael Bagge-Hernandez, Assistant United States Attorney, 2110 First Street, Fort Myers, FL 33901.

/s/ G. Ellis Summers, Jr.
G. Ellis Summers, Jr.
Assistant Federal Defender

EXHIBIT "A"

TERMS OF OREGON PROBATION

See attached.