# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

**UNITED STATES OF AMERICA**

|  |  |
|---|---|
| | **CASE NO.** |
| **v.** | **S2:16-cr-62-FtM-99MRM** |

**ERIC DAVID ERDMANN**
**a/k/a Eric Erdman**

### UNITED STATES' SECOND MOTION IN LIMINE
### TO EXCLUDE ANY EVIDENCE OF THE DEFENDANT'S INJURIES

The United States of America, by A. Lee Bentley, III, United States Attorney for the Middle District of Florida, moves in Limine to prevent the Defendant, his counsel, any agent and any witness from mentioning, directly, or indirectly, certain matters before the jury, specifically, the United States would move for the exclusion of any evidence that relates to the Defendant's injuries that he allegedly suffered on March 12, 2016, (injuries) and any treatment received henceforth. This type of evidence has no relevance to a violation of 18 USC § 2250, under Fed. R Evid. 401 and even if it somehow did, it should be excluded pursuant to Fed. R. Evid. 403. Furthermore, the Defendant will not be able to show that he is entitled to an affirmative defense pursuant to 18 USC § 2250(c).

## I.   DEFENDANT'S INJURIES AND SUBSEQUENT TREATMENT ARE NOT RELEVANT

The Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986); *see United States v. Hurn*, 368 F.3d 1359, 1362 (11th Cir. 2004) (stating that "the idea that

criminal defendants must be afforded the opportunity to present evidence in their favor" is implicit in the rights to compulsory process under the Sixth Amendment and due process under the Fifth Amendment). A defendant's right to a fair trial under the Fifth and Sixth Amendments is "violated when the evidence excluded is material in the sense of a crucial, critical, highly significant factor." *Hurn*, 368 F.3d at 1363-64. In assessing a defendant's claims under the Fifth and Sixth Amendments to call witnesses in his defense, the court engages in a two-step analysis: (1) whether the right was actually violated; and if so, (2) whether this error was "harmless beyond a reasonable doubt." *Id.* at 1362-63 (quotation omitted). A district court's exclusion of a defendant's evidence violates the Compulsory Process and Due Process guarantees in four circumstances:

> **First**, a defendant must generally be permitted to introduce evidence directly pertaining to any of the actual elements of the charged offense or an affirmative defense. **Second**, a defendant must generally be permitted to introduce evidence pertaining to collateral matters that, through a reasonable chain of inferences, could make the existence of one or more of the elements of the charged offense or an affirmative defense more or less certain. **Third**, a defendant generally has the right to introduce evidence that is not itself tied to any of the elements of a crime or affirmative defense, but that could have a substantial impact on the credibility of an important government witness. **Finally**, a defendant must generally be permitted to introduce evidence that, while not directly or indirectly relevant to any of the elements of the charged events, nevertheless tends to place the story presented by the prosecution in a significantly different light, such that a reasonable jury might receive it differently. *Id.* at 1363 (emphases added).

"Generally, courts should not prohibit a defendant from presenting a theory of defense to the jury. Nevertheless, the court recognizes that some relevant factual basis for the defense should exist under Federal Rules of Evidence 401 and 402

before evidence or testimony is offered." *United States v. Thompson*, 25 F.3d 1558, 1564 (11th Cir. 1994). For evidence to be relevant, "(1) [t]he evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action." *United States v. Glasser*, 773 F.2d 1553, 1559 n.4 (11th Cir. 1985). Irrelevant evidence is inadmissible. Fed. R. Evid. 402. As for relevant evidence, it may be excluded if its probative value is substantially outweighed by the danger of "unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "It is the province of the trial judge to weigh any materiality against any prejudice and, unless the judge's reading is 'off the scale,' his discretion is not abused." *United States v. Shelley*, 405 F.3d 1195, 1201 (11th Cir. 2005).

If the defendant's right to call witnesses was actually violated, the court then examines whether the error was "harmless beyond a reasonable doubt" under *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Id. at 1362–63. Under *Chapman*, the beneficiary of a constitutional error has the burden of proving "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *United States v. Parks*, -- Fed. Appx. - No. 14-15034, 2017 WL 393157, at *5 (11th Cir. 2017) *citing Chapman*, 386 U.S. at 24, 87 S.Ct. 824.

In the case *sub judice*, the defendant is charged with a violation of 18 U.S.C. § 2250. Under, § 2250(a), one who "(1) is required to register under [SORNA[1],] (2) ... travels in interstate or foreign commerce ... [,] and (3) knowingly fails to register" in the new state is eligible for up to ten years in prison for violating SORNA. *United States v. Beasley*, 636 F.3d 1327, 1329 (11th Cir. 2011) *citing Carr v. United States*, 560 U.S. 438, 438, 130 S. Ct. 2229, 2230, 176 L. Ed. 2d 1152 (2010).

    a. Defendant's injuries and subsequent treatment bear no relevance to his SORNA registration requirements or an affirmative defense

        i. Defendant's injuries and subsequent treatment bear no relevance to his SORNA registration requirements.

The Defendant was required to register as a sex offender because on or about July 13, 2010, the Defendant was convicted in the Multnomah Circuit Court, Multnomah County, Oregon, case number 09-01-30068, DA 2153456-1, for five Counts of violation of Oregon Statute § 163.686, encouraging child sexual abuse in the second degree (possession of child pornography). The Defendant was sentenced to 128 days in jail (time served) and 3 years of probation.  As part of his sentence, the Defendant was required to register as a sex offender.[2] The Defendant did register as a sex offender on July 20, 2010, with Oregon authorities but failed to update his sex offender registration when he absconded to the Kingdom of Cambodia (Cambodia)

---

[1] SORNA is the Sex Offender Registration and Notification Act 42 U.S.C. § 16901 *et. seq.*
[2] 42 U.S.C. § 16911 defines a "sex offender" as an individual who is convicted of a sex offense, which is a criminal offense that is, *inter alia*, a specified offense against a minor to include possession, production, or distribution of child pornography.

4

in 2011, in violation of Oregon State law. According to the Defendant's Motion for

Material Witness Videotaped Deposition, the Defendant allegedly sustained his

injuries on March 12, 2016, six years after the Defendant was convicted of his sex

crime. (Doc. 25). Since the Defendant's sex offense conviction predates his injuries

by six years, therefore, the Defendant's injuries and subsequent treatment bear no

relevance to the first element of 18 U.S.C. § 2250, that the Defendant is a sex

offender who is required to register.

> ii.  Defendant's injuries and subsequent treatment bear no
> relevance to his travel from Cambodia to Florida

On April 8, 2016, at the United States Embassy in Phnom Penh, Cambodia,

agents from the Department of Homeland Security and Department of State

interviewed the Defendant. The main purpose of the interview was to serve the

Defendant with a letter that informed him that his passport had been revoked by the

State Department. The letter dated April 8, 2016, signed by State Department

officials, as well as, signed by Defendant showing that he had received the letter

states in part:

> "The Department has been notified that you are the subject of a state or local
> warrant of arrest issued by the Circuit Court of the State of Oregon in Portland,
> Oregon, on December 13, 2010, Case number 090130068, charging you with the
> following felony offense: encouraging child sex abuse. Accordingly, application for a
> U.S. passport is denied and U.S. passport number xxxxx1711 is revoked. U.S.
> passport number xxxxx1711 is in the possession of the Department and will be
> destroyed. You are hereby requested to surrender any other U.S. passport that may
> be in your possession, to the bearer of this letter."

Since the Defendant's passport was revoked, his Cambodian visa, which

expired on March 3, 2016, could not be renewed. Since the Defendant's visa was

invalid, Cambodian General Department of Immigration (DGI) officials arrested the Defendant on April 21, 2016, for immigration violations. Under Cambodia law, in order for a United States citizen to obtain a visa, the applicant must have a valid passport with six (6) months of validity. The Defendant's passport was issued on June 13, 2006, and was set to expire on June 12, 2016.

After his arrest, the Defendant left Cambodia on April 27, 2016, on Qatar Airlines Flight 971. The flight left Phnom Penh, Cambodia and landed in Doha, Kingdom of Qatar (Qatar), on April 28, 2016. Subsequently, on the same day, the Defendant took Qatar Airlines flight 359 from Doha, Qatar to New York, New York. Afterwards, still on April 28, 2016, the Defendant took Jetblue flight 4133 from New York, New York to Fort Myers, Florida, landing in Fort Myers, Florida at 2:52 p.m.[3] and from that point forward the Defendant resided in Fort Myers, Florida.

The Defendant's injuries and subsequent treatment bear no relevance to his travel through interstate and foreign commerce from Cambodia to Florida because the Defendant's travel was precipitated by the revocation of his passport, which was triggered by his absconding from Oregon and subsequent warrant for his arrest. The Defendant would have been deported from Cambodia, and subsequently returned to the United States whether or not the Defendant was in good health or bad health

---

[3] Cambodia is +7 hours ahead of Greenwich Mean Time (GMT) and +12 hours ahead of Eastern Standard Time. Therefore, an airplane travelling west from Cambodia could still be on the same date even though the travel time is more than 24 hours.

because his passport had been revoked. Therefore, the Defendant's injuries and subsequent treatment bear no relevance to the second element of 18 U.S.C. § 2250, that the Defendant traveled in interstate and foreign commerce from Cambodia to Florida and should not be admitted in relation to this element.

      iii.   Defendant's injuries and subsequent treatment bear no relevance to the Defendant's knowingly failure to register in Florida

Once the Defendant made his residence in Punta Gorda, Florida, on April 28, 2016, he had three business days to register as a sex offender. *See* 42 U.S.C. § 16913. In the State of Florida, sex offenders must register with the sheriff's office in the county in which the offender, *inter alia*, establishes or maintains a permanent, temporary, or transient residence, if the Defendant is not in custody. *See* Fla. Stat. § 943.0435. After a sex offender registers with the sheriff's office, then the record of that registration is forwarded to the Florida Department of Law Enforcement (FDLE), where it is maintained.

As part of her duties, Deputy Amanda Sienkiewicz with Lee County Sheriff's Office assists in registering sex offenders in Lee County, Florida. Deputy Sienkiewicz made a sworn statement attached as Attachment A, where she explains that a sex offender can make an initial registration 24 hours a day, seven days a week.

Deputy Sienkiewics addresses the issue regarding sex offenders who have disabilities who must register with Lee County Sheriff's Office. She states:

The Lee County Sheriff's Office is equipped to handle persons with all disabilities in regards to sexual offender and predator registration. At the front of the building there is a ramp for individuals who are not able to successfully climb stairs

along with handicap parking spots. In the rare event that a sexual offender or predator is not able to come into the Sheriff's Office due to a disability, **a detective can <u>go to the offender's home</u> and complete the registration.** If an offender or predator would require a detective to go to their home, **all they would have to do is <u>call</u>** a member of the Lee County Sheriff's Office Sexual Offender & Predator Unit and set this up." (emphasis added).

For the Defendant to register as a sex offender, in the case *sub judice*, the Defendant simply had to telephone the Lee County Sheriff's Office to schedule a home visit by a detective, if he felt that he could not make the trip to the sheriff's office. Since, the Defendant's injuries were to his leg and did not affect his ability to use the telephone, he could have telephoned. Clearly, the Defendant did not have any trouble using the telephone, especially since he talked to his partner frequently on the phone, while she was in Cambodia and he was in Florida. Furthermore, even with his injuries, the Defendant registered on May 28, 2016. As discussed *infra*, there is no real difference in the Defendant's circumstances between May 24, 2016, the day before the Defendant was arrested in the case *sub judice*, and May 28, 2016, the day when the Defendant registered, other than the Defendant was under judicial conditions of release.

SORNA is not a specific intent law. In 18 U.S.C. § 2250(a), "knowingly" modifies "fails to register." There is no language requiring specific intent or a willful failure to register such that he must know his failure to register violated federal law. *See Bryan v. United States*, 524 U.S. 184, 192-93, 118 S.Ct. 1939, 141 L.Ed.2d 197(1998) (noting that "the term 'knowingly' does not necessarily have any reference to a culpable state of mind or to knowledge of the law" and that "the term

'knowingly' merely requires proof of knowledge of the facts that constitute the offense"). And as a general matter, ignorance of the law does not provide a defense, for the law presumes that every person knows the law. *See Cheek v. United States*, 498 U.S. 192, 199, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991). To assume otherwise would lead to the inability to enforce criminal provisions against persons not learned in the law or unaware of specific statutes.

Thus, his injuries and subsequent treatment bear no relevance to the Defendant's knowingly failure to register in Florida. Therefore, the Defendant's injuries and subsequent treatment should not be admitted in relation to this element.

        iv.   Defendant cannot make a threshold showing that he is entitled to an Affirmative Defense.

The only argument that the Defendant could make as to the relevance of the introduction of his injuries and subsequent treatment at trial is that it is relevant to an affirmative defense. The Defendant has alluded that he plans on presenting an affirmative defense pursuant to 18 U.S.C. § 2250(c)[4]. Specifically, that his injuries and treatment created an uncontrollable circumstance that prevented the Defendant from registering. In order to avail himself of this defense, the Defendant must prove that:

1. uncontrollable circumstances prevented him from complying (registering as a sex offender);

_____

[4] 18 U.S.C. 2250(c) was amended and was previously 18 U.S.C. 2250(b).

2. the defendant did not contribute to the creation of such circumstances in reckless disregard of the requirement to comply; and

3. the individual complied as soon as such circumstances ceased to exist. *See* 18 U.S.C. § 2250(c).

"[A] defendant has the right to have the jury instructed on a theory of defense only if the proposed instruction presents a valid defense and if there has been some evidence adduced at trial relevant to that defense." *United States v. Duperval*, 777 F.3d 1324, 1334 (11th Cir. 2015). However, "the defendant bears the burden of proving it by a preponderance of the evidence." *United States v. Dicks*, 338 F.3d 1256, 1257 (11th Cir. 2003). Furthermore, the defendant must prove all three elements to avail himself of the defense. *Id.*

1. The Defendant never experienced an uncontrollable circumstance that prevented him from complying (registering as a sex offender)

If the Defendant alleges that the injuries to leg was an uncontrollable circumstance that prevented him from registering as a sex offender, then the Defendant misinterprets the first prong of 18 U.S.C. 2250(c).

Congress enacted SORNA in 2006 "to establish a comprehensive national system for the registration of sex offenders." *United States v. Whitlow*, 714 F.3d 41, 43 (1st Cir.2013), *cert. denied*, *Whitlow v. United States*, 134 S.Ct. 287, 187 L.Ed.2d 207; *accord* 42 U.S.C. § 16901. "SORNA's general changes were designed to make more uniform what had remained 'a patchwork of federal and 50 individual state registration systems,'" *United States v. Kebodeaux*, 133 S.Ct. 2496, 2505, 186 L.Ed.2d

540 (2013) (*quoting Reynolds v. United States*, 132 S.Ct. 975, 978, 181 L.Ed.2d 935

(2012)), beset with "'loopholes and deficiencies' that had resulted in an estimated

100,000 sex offenders becoming 'missing' or 'lost,'" *id*. (*quoting* H.R.Rep. No. 109–

218, pt. 1, at 20, 26 (2005)).

SORNA provides that "[a] sex offender shall register, and keep the

registration current, in each jurisdiction where the offender resides, where the

offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a).

In addition, SORNA gave the Attorney General of the United States the authority to

specify its applicability to sex offenders convicted before its enactment or its

implementation in a particular jurisdiction. Id. § 16913(d). Pursuant to this authority,

the Attorney General issued a regulation on February 28, 2007, making SORNA's

registration requirements applicable to "all sex offenders, including sex offenders

convicted of the offense ... prior to the enactment of [SORNA]." 28 C.F.R. § 72.3.

While SORNA does order that "a sex offender shall register, and keep the

registration current" in each jurisdiction with which he has contact, 42 U.S.C. §

16913(a), nowhere does it require that the States comply with its directives. Rather,

SORNA gives the States a choice, indicating that "a jurisdiction that fails ... to

substantially implement [SORNA] shall not receive 10 percent of the funds that

would otherwise be allocated" to the jurisdiction for federal criminal justice

assistance. *Id*. § 16925(a); *see also* 72 Fed.Reg. at 8895 ("The SORNA provisions cast

as directions to jurisdictions and their officials are, in relation to the states, only

conditions required to avoid [a] funding reduction"). Thus, while SORNA imposes a

11

duty on the sex offender to register, it nowhere imposes a requirement on the State to accept such registration. Indeed, the criminal provisions of SORNA also recognize that a State can refuse registration inasmuch as they allow, as an affirmative defense to a prosecution, the claim that "uncontrollable circumstances prevented the individual from complying." 18 U.S.C. § 2250(c)(1). Of course, if a State elects not to participate in the implementation of SORNA, it risks losing some funding. *See* 42 U.S.C. § 16925(a). There are only 17 states and 3 territories that have substantially implemented SORNA's requirements.

*See* https://ojp.gov/smart/newsroom_jurisdictions_sorna.htm.

Assuming *arguendo*, if a sex offender moves to a jurisdiction that does not have a sex offender registry or that will not register a sex offender because that jurisdiction's sex offender registration requirements are less stringent than federal requirements, then that inability to register would be an uncontrollable circumstance that prevents the individual from complying, which is the type of uncontrollable circumstance contemplated in 18 U.S.C. 2250(c). *See United States. v. Brown*, 586 F.3d 1342, 1348-1349 (2009); *see also Kennedy v. Allera*, 612 F.3d 261, 269 (4th Cir. 2010); *United States v. Stock*, 685 F.3d 621, 629-630 (6th Cir. 2012). *See United States v. Springer*, 51 F.3d 861, 866 (9th Cir. 1995) ("The very idea of 'prevent' is something that forestalls, frustrates or deprives one of the power of acting. That does not describe a situation where a person sits down and decides that he simply will not do something, even though he can do it.").

12

The Defendant in the case *sub judice*, could have register, all he had to do was to pick up the phone and telephone the sheriff's office. In fact, as soon as he was indicted, he did register. Furthermore, "[t]he Lee County Sheriff's Office is equipped to handle persons with all disabilities in regards to sexual offender and predator registration." *See* Attachment A.

Medical records show that on May 2, 2016, the Defendant arrived at Gulf Coast Hospital, located at 13681 Doctors Way, Fort Myers, FL 33912. (Def. Disco. No. 0383). Gulf Coast Hospital is located approximately 27 miles from the Defendant's residence in Punta Gorda, Florida, and the hospital is located approximately **1.6 miles** from where a sex offender can register at the Lee County Sheriff's Office at 14750 6 Mile Cypress Pkwy, Fort Myers, Florida 33912. During this visit, the Defendant admitted to his doctor that he has recently applied weight to his foot to remain mobile although it is "somewhat difficult." *Id.* There are no medical records that show that the Defendant was hospitalized and bedridden from May 2, 2016, until May 27, 2016, which means that the Defendant had to travel to and from his residence in Punta Gorda, Florida, to Fort Myers, Florida, several times.

Additionally, on May 18, 2016, medical records show that the defendant was examined in a follow-up appointment by a doctor who was located at 13710 Metropolis Ave. # 104 Fort Myer, Florida 33912. (Def. Disco. No. 0393).  The Defendant had to travel approximately 27 miles from his residence in Punta Gorda, Florida, however, the doctor's office is located **1.9 miles** from where a sex offender

13

registers at the Lee County Sheriff's Office at 14750 6 Mile Cypress Pkwy, Fort Myers, Florida 33912. The Defendant's medical records indicate that his level of pain was "0/10" and that the Defendant was able to be partially weight bearing with crutches. *Id.*

The Defendant refused to travel less than **two (2) miles** from his medical appointments to register as a sex offender, even though the Defendant had access to transportation and the ability use crutches. Furthermore, there is no mention of an inability to use a telephone or otherwise communicate listed in the Defendant's medical reports from the May 2, 2016, and the May 18, 2016, visits, especially since he spoke with his partner who was in Cambodia frequently during that time. That said, the Defendant did not claim that leaving his bed would have imperiled his life or that he lacked access to transportation or a telephone.

The Eleventh Circuit recognized in *United States v. Demarco*, 634 Fed.Appx. 253,255 (11th Cir. 2015) the defendant was not entitled to have an affirmative defense instruction read to the jury because he was legally required to register under SORNA even if his opportunities to do so were limited. The Eleventh Circuit held that the District Court reasonably determined that uncontrollable circumstances did not prevent the defendant from updating his registration as a sex offender even though the defendant was employed on a boat and spent the majority of his time at sea for his employment. *Id.* The Court reasoned that the defendant had opportunities, albeit brief, to update his registration. *Id.* Therefore, the Defendant in

14

the case *sub judice* did not encounter an uncontrollable circumstance that prevented

him from registering as a sexual offender because he could have made a phone call to

Lee County Sheriff's deputies to come to his house, or drive less than **two (2) miles**

coming from or going to his medical appointments. Moreover, two miles pales in

comparison to the distance that the Defendant traveled from Cambodia to Florida.

Thus, the Defendant cannot show that he had an uncontrollable circumstance that

prevented him from registering, which means that his injuries and subsequent

treatment are not relevant to the case *sub judice.*

> 2. the defendant may have contributed to the creation of such circumstances in reckless disregard of the requirement to comply

If the Defendant is alleging that his injuries and subsequent treatment are the

reason why he could not register as a sex offender, the Defendant must show that he

did not contribute to the creation his injuries in reckless disregard of the requirement

to comply. *See* 18 U.S.C. § 2250(c)(2). Though the United States submits that the

Defendant cannot overcome the first prong of 18 U.S.C. § 2250(c), assuming

*arguendo* that the Court disagrees, the Defendant cannot overcome the second prong.

According to the Defendant's Motion for Reconsideration, the Defendant

alleges that he was in a motorcycle accident on March 12, 2016, that caused the

injuries to his leg. (Doc. 39). The Defendant proffered that his partner came after the

accident, but conceded that she did not witness the incident. *Id.* During the

deposition of the Defendant's partner, she confirmed that she did not witness the

accident but only came after the Defendant had telephoned her to come. The Defendant's partner cannot substantiate who was at fault or who caused the accident. It is well settled that a motor vehicle (including a motorcycle) is not an "inherently dangerous product" whereby motorcycle use could be the only cause of the Defendant's injuries. *See Lollie v. General Motors Corp.*, 407 So.2d 613, 615 (Fla. 1st DCA 1981); *Mendez v. Honda Motor Co.*, 738 F.Supp. 481, 483 (S.D.Fla.1990); *O'Connor v. Kawasaki Motors Corp.*, U.S.A., 699 F.Supp. 1538, 1543 (S.D.Fla.1988). The Defendant has not submitted any police reports, or eye witness affidavits that describe that he was not the cause of the accident by recklessly handling the motorcycle. Therefore, since he cannot show that he did not contribute to his injuries, which means that his injuries and subsequent treatment are not relevant to the case *sub judice.*

> 3.  The Defendant's compliance did not occur as soon as such circumstances ceased to exist.

If the Defendant is alleging that his injuries and subsequent treatment are the reason why he could not register as a sex offender, and that the Defendant did not contribute to the creation his injuries in reckless disregard of the requirement to comply, then the Defendant must show that he complied as soon as the circumstances ceased to exist. *See* 18 U.S.C. § 2250(c)(3). As stated *supra*, the Defendant must prove all three elements. *Dicks*, 338 F.3d at 1257. Though the United States submits that the Defendant cannot overcome the first two prongs of 18

U.S.C. § 2250(c), assuming *arguendo* that the Court disagrees, the Defendant cannot overcome the third prong.

The Defendant's requirement to register as a sex offender, for the case *sub judice*, began on April 28, 2016, when he started to resided in Florida. *See* 42 U.S. § 16913. The Defendant did not register as a sex offender until May 28, 2016, because he was required to register as a condition of bail. *See* Doc. 7. [5] Other than the fact that the Defendant was indicted and force to register as a sex offender as a condition of his bail, no other circumstance changed. The Defendant's injuries did not miraculously heal. The Defendant registered because his liberty was in jeopardy and that is why he complied with his registration requirements, not because his injuries changed.

If the Defendant argues that his injuries are the reason why he could not comply with the registration requirements, and he did not contribute to those injuries, he cannot argue that his injuries existed on May 24, 2016, the day before he was arrested, and ceased to exist on May 28, 2016, the day that he registered. Furthermore, his registration on May 28, 2016, further proves that his injuries never prevented him from registering as a sex offender. Therefore, since his injuries did not cease to exist on May 28, 2016, when he registered *i.e.* the third prong of 18 U.S.C. 2250(c), his injuries and subsequent treatment are not relevant to the case *sub judice*.

          b.  Defendant's injuries and subsequent treatment do not pertain to a collateral matter that, through a reasonable chain of

---

[5] Condition 1 of the Defendant's Condition of Release states that "[t]he defendant shall not commit any offense in violation of federal, state or local law while on release in this case.

> inferences could make offense or affirmative defense more or less certain.

The Defendant's injuries do not pertain to a collateral matter that, through a reasonable chain of inferences could make offense or affirmative defense more or less certain. Where the proffered evidence does not bear a logical relationship to an element of the offense or an affirmative defense, whether direct or indirect, a defendant has no right to introduce that evidence and a district court may properly exclude it. *See United States v. Ramos*, 933 F.2d 968, 974 (11th Cir.1991) (upholding district court's refusal to allow defendant to introduce evidence of a conversation between a confidential informant and allegedly corrupt DEA agents in New York because that testimony "did not link any improprieties between the [informant] and New York DEA agents to the [defendant] or the Miami DEA agents" who conducted the investigation of the defendant). Moreover, a district court may exclude evidence where the relationship between the evidence and the element of the offense or affirmative defense at issue is simply too attenuated. That is, there comes a point-and a district court is perhaps in the best position to judge this-when the chain of inferences linking evidence and the legally relevant point to be proven is simply too long, dubious, or attenuated to require that the evidence be introduced. *See United States v. Gonzalez*, 71 F.3d 819, 836 (11th Cir.1996) (upholding district court's decision to exclude testimony of an accident reconstruction expert because "whether appellant rammed the officers' car, or vice versa, was simply not adequately material to the crimes for which appellant stood charged at trial").

18

Just as in *Gonzalez*, the Defendant's injuries and subsequent treatment is not adequate material for the crime charged.

      c.   Defendant's injuries and subsequent treatment does not have a substantial impact on the credibility of an important government witness.

The Defendant's injuries or treatment does not bear on the credibility of an important government witness. *See United States v. Glen Edward Ray, Jr., a.k.a. Woo, Defendant*, No. 115CR00184AKKSGC1, 2017 WL 836050 (11th Cir. Mar. 3, 2017).

      d.   Defendant's injuries and subsequent treatment will not place the story presented by the prosecution in a significantly different light, such that a reasonable jury might receive it differently.

In some cases, the government's selective presentation of entirely truthful evidence can cast a defendant in an inaccurate, unfavorable light, or make entirely legitimate, normal, or accepted acts appear unusual or suspicious. *See Hurn*, 368 F. 3d at 1367. In these situations, the defendant has the right to introduce additional evidence to dispel this unjustified taint, even if that evidence does not directly or indirectly bear on a particular element of an offense. *Id.*

Nonetheless, in the case *sub judice*, since the Defendant could have telephoned to arrange to have sheriff's deputies come to his residence to register him, or travel less than **two (2) miles** to register himself, his injuries and subsequent treatment made no difference to his ability to register and its inclusion is not the type of evidence contemplated by *Hurn. See Glen Edward Ray, Jr.* 2017 WL 836050.

## II.      DEFENDANT'S INJURIES AND SUBSEQUENT TREATMENT ARE NOT RELEVANT BUT EVEN IF IT IS RELEVANT IT SHOULD BE EXCLUDED PURSUANT TO FED. R EVID. 403

The United States contends that any evidence that relates to the Defendant's injuries that he allegedly suffered on March 12, 2016, and any treatment received henceforth is not relevant to the case *sub judice*. Nonetheless, assuming *arguendo* that the Court finds that this evidence is relevant, this evidence should still be excluded pursuant to Fed. R Evid. 403.

Evidence may, of course, be relevant but unfairly prejudicial. Fed.R.Evid. 403. Whether this is so is a matter left, within broad limits, to the discretion of the trial court. *See, e.g., United States v. Kadouh*, 768 F.2d 20, 21 (1st Cir.1985); *United States v. Kepreos*, 759 F.2d 961, 964 (1st Cir.), *cert. denied*, 474 U.S. 901, 106 S.Ct. 227, 88 L.Ed.2d 227 (1985). The question is one of "unfair" prejudice—not of prejudice alone. *See, e.g., Dollar v. Long Manufacturing, N.C., Inc.*, 561 F.2d 613, 618 (5th Cir.1977) ("virtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair'"), *cert. denied*, 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978). A trial court has broad discretion regarding the admission of cumulative statements. This discretion to exclude "is particularly appropriate when dealing with essentially cumulative evidence ... or for evidence adding only a minor 'incremental probity'", *United States v. Mock*, 640 F.2d 629, 632 (5th Cir.1981), *quoting United States v. Beechum*, 582 F.2d 898, 914 (5th Cir.1978), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979).

The inclusion of the Defendant's injuries and subsequent treatment will only confuse the jury and garner unfair sympathy for the Defendant. The Court of Appeals dealt with this issue in *United States v. Crosby*, 713 F.2d 1066, 1073 (5th Cir. 1983). In *Crosby*, the defendant attempted to introduce a tape recording of the final stages of the hostage negotiation of a kidnapping incident, where a New Orleans police officer acting as negotiator allegedly represented to the defendant that he would not be jailed if he gave himself up and released his hostage. *Id.* The government filed a motion in limine to exclude as evidence this portion of the tape recorded exchange because the statements to the officer were ambiguous and would result in undue jury sympathy for the defendant. *Id.* The defense objected to the motion on the ground that its reading of Rule 106 of the Federal Rules of Evidence establishes a mandate that a tape recording must be introduced in its entirety if it is introduced at all. *Id.*  The trial court granted the government's motion in limine to bar introduction of this portion of the recording. *Id.* The appellate court agreed with the trial court and the government's position that the evidence should be excluded and determined that the evidence was irrelevant and had a potential for prejudice. *Id.* at 1074.

The evidence of the Defendant's injuries and subsequent treatment is similar to the evidence in *Crosby*. This evidence would unfairly garner sympathy for the Defendant because he was injured. Furthermore, it would confuse the jury as to the real issues to the case *sub judice*. Therefore, in the event that the Court finds the

Defendant's injuries and subsequent treatment are relevant, the Court should follow *Crosby* and exclude evidence of the Defendant's injuries and subsequent treatment pursuant to Fed. R. Evid. 403.

### III.        **CONCLUSION**

The Court should exclude any evidence that relates to the defendant's injuries that he allegedly suffered on March 12, 2016, and any treatment received henceforth since this type of evidence has no relevance to a violation 18 USC § 2250, under Fed. R Evid. 401 and even if it somehow did, it should be excluded pursuant to Fed. R. Evid. 403.

WHEREFORE, based on the foregoing reasons, the United States requests that the Court grant it's Second Motion in Limine.

Respectfully submitted,

A. LEE BENTLEY, III
United States Attorney


By:      *s/ Michael C. Baggé-Hernández*
         MICHAEL C. BAGGÉ-HERNÁNDEZ
         Assistant United States Attorney
         Florida Bar No. 0051923
         2110 First Street, Suite 3-137
         Fort Myers, Florida 33901
         Phone:  (239) 461-2200
         Fax:  (239) 461-2219
         Email: michael.c.bagge@usdoj.gov

22

U.S. v. ERIC DAVID ERDMAN             Case No. 2:16-cr-62-FtM-99MRM

CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2017, I electronically filed the foregoing with

the Clerk of the Court by using the CM/ECF system which will send a notice of

electronic filing to the following:

G. Ellis Summers
ellis_summers@fd.org

_s/ Michael C. Baggé-Hernández_
MICHAEL C. BAGGÉ-HERNÁNDEZ
Assistant United States Attorney