## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

**UNITED STATES OF AMERICA**

**v.**                                        **Case No. 2:16-cr-62-FTM-99MRM**

**ERIC DAVID ERDMANN**
**a/k/a Eric Erdman,**
_____/

## DEFENDANT'S SENTENCING MEMORANDUM
## AND REQUEST FOR A DOWNWARD VARIANCE

The Defendant, Eric David Erdmann, by and through his undersigned attorney, hereby files this motion in support of a sentence sufficient but not greater than necessary to achieve the goals of sentencing.

In furtherance of that effort, Mr. Erdmann seeks a downward variance pursuant to 18 U.S.C. § 3553(a) based on his personal history and characteristics, including, without limitation, his physical condition and injuries.

In conclusion, Mr. Erdmann urges the Court that a sentence sufficient but not greater than necessary to accomplish the goals of sentencing would be six months in prison.

## MEMORANDUM OF LAW

## SENTENCING GUIDELINES

The United States Probation Office believes that Mr. Erdmann's total adjusted offense level for Count 1 is 12, criminal history category III, for a range of 15 to 21 months. PSR, Doc. 143, ¶ 113.  Mr. Erdmann has filed objections, and believes that Mr. Erdmann's appropriate total adjusted offense level for Count 1 is 9, criminal history category III, for a range of 8 to 14 months.  PSR, Doc. 143, pg. 29.

## REQUEST FOR A DOWNWARD VARIANCE

### A. *Booker* and 3553 Factors

In the aftermath of *United States v. Booker*, 543 U.S. 220 (2005), the Eleventh Circuit adopted a two-step sentencing procedure in *United States v. Tally*, 431 F.3d 784, 786 (11th Cir. 2005).  "First, the district court must consult the Guidelines and correctly calculate the range provided by the Guidelines.  *Id.* (*citing United States v. Crawford*, 407 F.3d 1174, 1178 (11th Cir. 2005).  Second, the Court must consider the factors enumerated at 18 U.S.C. § 3553(a).  *Id.*

As explicitly recited by *Talley*, *supra*, and as further delineated in *Rita v. United States*, 551 U.S. 338, 364-65 (2007), the § 3553(a) factors are:

(1)   The nature and circumstances of the offense and the history and characteristics of the defendant;

(2)   The need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3)   The need for deterrence;

(4)   The need to protect the public;

(5)   The need to provide the defendant with necessary educational training, vocational training and medical care;

(6)   The kinds of sentences available;

(7)   The Sentencing Guideline range;

(8)   Pertinent policy statements of the Sentencing Commission;

(9)   The need to avoid unwarranted sentencing disparities; and

(10)   The need to provide restitution to victims.

"The statute, as modified by *Booker*, contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary,' to achieve

the goals of sentencing[.]" *Kimbrough*, 552 U.S. 85, 101 (2007); *See United States v. Pugh*, 515 F.3d 1179, 1188-89 (11th Cir. 2008) (3553(a) factors guide the district court's sentence and the appellate court's review of that sentence); *United States v. Onofre-Segarra*, 126 F.3d 1308, 1309 (11th Cir. 1997) *cert. denied* 522 U.S. 1142 (1998). "In sum, while the statute still requires the Court to give respectful consideration to the Guidelines (cites deleted), *Booker* 'permits the Court to tailor the sentence in light of other statutory concerns as well.'" *Kimbrough, supra* (*quoting Booker*, 543 U.S. at 245-46); *United States v. Williams*, 435 F.3d 1350, 1354 n.2 (11th Cir. 2006).

**B.**   **Mr. Erdmann's Personal History and Characteristics Warrant a Downward Variance.**

A jury of Mr. Erdmann's peers has found Mr. Erdmann guilty of failing to register as a sex offender.  Mr. Erdmann respects the jury's decision.  However, the facts surrounding Mr. Erdmann's case—which were presented at trial—are unique.  Mr. Erdmann was not a healthy individual who was simply dodging registration.  Instead, the evidence at trial established that Mr. Erdmann was seriously injured in a motorcycle accident on March 11, 2016 and that there were a number of failed surgeries in Cambodia.  PSR, Doc. 143, ¶ 13-14.  On April 28, 2016, Mr. Erdmann returned to this country with an infected, open wound in his knee.  Mr. Erdmann and his father investigated how to register on April 30, 2016 by visiting the Lee County Sheriff's Office's website—which indicated that registration was required in person.  Mr. Erdmann was admitted to the Cape Coral Hospital on May 1, 2016 as a result of the infection from surgery.  *Id.* at ¶ 80.  Mr. Erdmann remained at the Cape Coral Hospital and Gulf Coast Hospital until his release on May 8, 2016.  *Id.* at ¶ 80-81. Pursuant to David Erdmann's testimony, Mr. Erdmann remained bed ridden at home until May 18, 2016 when Mr. Erdmann visited Dr. Casola's office for a check-up.  Mr. Erdmann

then remained at home until being arrested on May 26, 2016.  Throughout this entire process, Mr. Erdmann was either in pain or using prescription narcotics.  Mr. Erdmann's circumstances involved a substantial injury, severe pain, and fear of loss of limb.  A prison sentence is warranted, but the circumstances justify a downward variance.

**C.  Mr. Erdmann's Acute Desire to Return to Cambodia to Be With his Wife Will Make Supervised Release a Particularly Harsh Punishment—Which Will Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense.**

One of the unique factors about Mr. Erdmann's case is that he desperately wants to return to Cambodia to be with his wife.  To do so, he will need a valid passport, which will require completing his Federal prison sentence, resolving his issues from his Oregon Probation, including any prison sentence for his probation violation, and completing Federal Supervised Release.  His minimum supervised release will be five years.  PSR, Doc. 143, ¶ 115.  As a result, it will be many years before Mr. Erdmann can return to Cambodia (assuming Cambodia will allow him back into the country).  His separation from his wife is not an actual term of his sentence, but it is the practical effect of his supervised release.  Attached as <u>Exhibit "A"</u> is a letter from Aun Pol—Mr. Erdmann's wife—regarding the difficulties that supervised release will place on their relationship.  For the foregoing reasons, any prison sentence which Mr. Erdmann receives, in addition to supervised release, will have an additional punitive impact on Mr. Erdmann—which is relevant in fashioning an appropriate sentence.

## CONCLUSION

For the reasons set forth in this Memorandum, it is respectfully submitted that Mr. Erdmann's personal history and characteristics, along with the additional punitive effect of supervised release unique to Mr. Erdmann, justify a downward variance.  A sentence of six months prison with a five-year term of supervised release would be a sufficient but not greater than necessary punishment.

Respectfully submitted,

DONNA LEE ELM
Federal Defender

By: /s/ G. Ellis Summers, Jr.
G. Ellis Summers, Jr.
Florida Bar No. 0815691
Assistant Federal Defender
1514 Broadway, Suite 301
Ft. Myers, Florida 33901
Telephone: 239-334-0397
Fax: 239-334-4109
E-Mail: ellis_summers@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 10th day of July, 2017, the foregoing was electronically filed with the Clerk of Court and a copy will be sent electronically to Michael Bagge-Hernandez, Assistant United States Attorney, 2110 First Street, Fort Myers, FL 33901.

/s/ G. Ellis Summers, Jr.
G. Ellis Summers, Jr.
Assistant Federal Defender