UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

    v.                                         CASE NO. 2:16-cr-62-FtM-38MRM

ERIC DAVID ERDMANN

**UNITED STATES' SENTENCING MEMORANDUM**

The United States of America, by and through the undersigned Assistant United States Attorney, submits the following sentencing memorandum for the Court's consideration in this case.

### I.    BACKGROUND

On July 13, 2010, the defendant was convicted in the Multnomah County Circuit Court, Portland, Oregon, of five counts of encouraging child sexual abuse in the second degree. PSR ¶ 6. He was sentenced to 120 days in jail (time-served) and placed on three years of probation. *Id.* Additionally, the Court ordered that the defendant serve a three-year probation and be placed on sexual offender special conditions. PSR ¶¶ 6-7 Furthermore, the defendant was required to register as a sex offender. *Id.* His other conditions included, but were not limited to the following: that he was not to have contact with children, frequent places designed for primary use of children (schools, playgrounds, zoos, etc.) without written permission, to not seek employment

or volunteer work that involves contact with minors, to enter and successfully complete sex offender treatment. PSR ¶ 7. Though the defendant initially registered as a sex offender, he absconded from Oregon authorities at the end of 2010. PSR ¶¶ 7-9. After the defendant failed make a scheduled appointment with his probation officer, the Oregon authorities issued a warrant for his arrest on December 13, 2010. PSR ¶ 9.

In violation of his probation, the defendant fled to the Kingdom of Cambodia (Cambodia) in 2011. *Id.* The defendant never registered with the Oregon authorities that he was leaving Oregon. *Id.* During his stay in Cambodia, the defendant worked at various English educational institutions, including the Home of English International School of Phnom Penh. PSR ¶ 103. According to the school's website,[1] the school has students as young as six years old. The defendant's employment at the school was in direct violation of his probation because he is prohibited from being at places where children frequent including schools; however, since he was outside the jurisdiction of United States, the defendant did not face any repercussions for his probation violations. PSR ¶ 9.

The defendant never intended to return to the United States or comply with the terms of his probation. In fact, during an interview with passport

---

[1] http://www.homeofenglish.edu.kh/index.php/programs/children-s-english-program

officials, the defendant said that, "the U.S. is garbage." PSR ¶ 19. The defendant attempted to renew his U.S. passport on March 18, 2016, so he could obtain another Cambodian visa; however, the U.S. State Department at the U.S. embassy in Phenom Penh denied his passport application and subsequently revoked his passport because he had the outstanding arrest warrant from Oregon. PSR ¶¶ 9-13.

The defendant never showed any remorse for his actions. When confronted by the local Cambodian media about his past conviction, the defendant claimed that the media was attacking him and that he was going to "go after the journalist who wrote the article."[2] At trial, the defendant's probation officer testified that the defendant had contacted her and asked her to have the warrant rescinded. The defendant did not intend to return to the United States and comply with his probation, only to remain abroad and free from U.S. authorities.

Because the defendant did not have legal status to be in Cambodia, Cambodian authorities allowed him to leave the country voluntarily, and he left on April 28, 2016. PSR ¶ 25.

After he was forced to leave Cambodia, the defendant could have

---

[2] http://www.khmer440.com/k/2016/05/is-eric-david-erdmann-a-falsely-accused-victim-of-mistaken-identity-or-a-lying-fugitive-child-sex-offender/
A copy of the article is included as an exhibit.

traveled to Oregon to resolve his legal situation and seek further medical treatment for his injuries; however, he traveled through interstate and foreign commerce to Florida. PSR ¶ 28. The defendant never notified his probation officer that he had come to Florida, and he never registered as a sex offender even though he had lived in Lee County, Florida, from April 28, 2016, until May 27, 2016. The defendant traveled several times from his parents' home in Burnt Store Marina to his doctor's office in Fort Myers, which is approximately 30 miles in each direction. Though the defendant from his home to the doctor's office doctor and he went to Wal-Mart to fill his prescription and buy socks and underwear, he choose not to register as a sex offender even though the Lee County Sheriff's Office is less than two miles from his doctor's office. The defendant finally registered as a sex offender on May 28, 2016, two days after his arrest by the U.S. Marshals Service.

On March 1, 2017, the grand jury sitting in the Middle District of Florida, returned a one-count Superseding Indictment alleging violations of 18 U.S.C. § 2250 for failing to register as a sex offender after traveling in interstate and foreign commerce to Florida. (Doc. 81). On March 23, 2017, a trial jury found the defendant of the charges alleged in the one-count Superseding Indictment. (Doc. 130). After the verdict was returned, the Court remanded the defendant into custody, as the deputy U.S. Marshals were

preparing the defendant for incarceration, they found $1,998.28 in U.S. currency in his possession.

The United States Probation Office (USPO) filed a presentence investigation report (PSR) on June 26, 2017. (Doc. 143). In its report, the USPO calculated the defendant's total offense level at 12. PSR ¶ 45. The USPO correctly did not subtract any points for registering as a sex offender pursuant to USSG § 2A3.5(b)(2) because, as the commentary section notes, "the defendant's voluntary attempt to register or to correct the failure to register must have occurred prior to the time the defendant knew or reasonably should have known a jurisdiction had detected the failure to register." The defendant did not register until after he was indicted and as a condition of bail, order by the Court to comply with the law, even though he had many opportunities to register, thus the USPO correctly excluded the three-point subtraction. *See United States v. Green*, 505 Fed. Appx. 65 (2nd Cir. 2012)(While uncontrollable circumstances may have prevented a defendant from registering as a sex offender immediately upon entering the state, they did not impede his efforts throughout the whole time that he remained in the state before being arrested for this offense, and thus not eligible for the reduction.) Furthermore, the jury had considered the issue of uncontrollable circumstances preventing the defendant from registering as an affirmative

defense and the jury determined that there were not any uncontrollable circumstances that had prevented the defendant from registering.

Since the defendant put the government to its burden at trial and never accepted responsibility for his actions, the USPO correctly did not subtract any points for acceptance of responsibility pursuant to section USSG § 3E1.1. PSR ¶ 44. The USPO correctly calculated the defendant's criminal history category of III. PSR ¶ 61. With a total offense level of 12 and criminal history category of III, the guideline imprisonment range is 15-21 months and a supervise release term of at least five (5) years pursuant to 18 U.S.C. § 3583(k). PSR ¶¶ 113, 115.

## II.     SENTENCING RECOMMENDATION

### A. Discussion

The United States recommends a term of imprisonment of twenty-one months, which is at the high end of the sentencing guidelines range, followed by ten years of supervised release. This is a sentence that reflects not only the seriousness of the offense, and other relevant conduct, but also defendant's personal history and characteristics.

The sentencing guidelines, of course, are now advisory. *United States v. Booker*, 543 U.S. 220 (2005). Nonetheless, they still serve as the starting point and initial benchmark in all sentencing proceedings. *Peugh v. United States*, 133

S. Ct. 2072, 2080 (2013); *Gall v. United States*, 552 U.S. 38, 49 (2007). They are a statutory factor that sentencing courts must consider when imposing a sentence, *see* 18 USC §3553(a)(4); *United States v. Rita*, 551 U.S. 338, 347-48 (2007), and "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Rita*, 551 U.S. at 350. Thus, when a sentencing judge's "discretionary decision accords with the Commission's view of the appropriate application of § 3553(a) in the mine run of cases, it is probable that the sentence is reasonable." *Id*. at 351.

While the guidelines are advisory, they are far from superfluous. The guidelines "provide the framework for the tens of thousands of federal sentencing proceedings that occur each year." *Molina-Martinez v. United States*, 578 U.S. ___; 136 S.Ct. 1338, 1342 (2016). The guidelines were designed to achieve uniformity in sentencing among different courts for similar criminal conduct, as well as promoting proportionality in sentencing through a system that imposes "appropriately different sentences for criminal conduct of different severity." *Id*. (internal quotation marks and citation omitted).

Sentencing decisions remain "anchored" by the guidelines. *Peugh*, 133 S. Ct. at 2083. The guidelines remain "the lodestone of sentencing," and "cabin the exercise" of a sentencing court's discretion. *Id*. at 2084. The guidelines "inform and instruct the district court's determination of an

7

appropriate sentence." *Molina-Martinez*, 136 S.Ct. at 1346. At the same time, the Court must also consider all the factors under 18 U.S.C. § 3553(a), including the defendant's history and characteristics, the nature and seriousness of the offense, the need to provide just punishment and adequate deterrence, the need to promote respect for the law, and the need to protect the public from further crimes committed by the defendant. 18 U.S.C. §§ 3553(a)(1)-(2). Other factors include "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), and, where applicable, the need to provide restitution to any victims of the offense, 18 U.S.C. §3553(a)(7). *See also Rita*, 551 U.S. at 347-48 (enumerating the statutory sentencing factors); *Gall*, 552 U.S. at 50, n.6 (same).

### B. History and Characteristics of the Defendant

In light of all of the facts and circumstances present in this case, a sentence of twenty-one (21) months of imprisonment followed by ten years of supervised release, is fair, just, and reasonable. The defendant is required to register as a sex offender because he was convicted of encouraging child sex abuse in the first degree in Oregon. Clearly, the sentence that he received in that case did little to deter further criminal activity because although he initially registered as a sex offender in Oregon, the defendant committed a

new criminal offense by absconding to Cambodia without updating his registration, which violated Oregon state law. By absconding to Cambodia, the defendant also violated his term of probation.

The defendant's behavior in Cambodia also shows his lack of respect for the Court's sentence he received in Oregon. The Oregon Court ordered the defendant not have any contact with minors. The defendant could have chosen any occupation to sustain himself in Cambodia; however, the defendant deliberately chose to work at a school where he would have access to children as young as six years old. The defendant himself even admitted to teaching thirteen year olds. PSR ¶ 33. The defendant's contact with minor children is especially troubling since his Oregon conviction consisted of encouraging child sex abuse in Oregon.

The defendant's deliberate disregard for the judicial system is not limited to him absconding from Oregon. The defendant has a history of distain for the legal system placing conditions on his liberty. As noted in his criminal history, the defendant's criminal history/convictions include: bail jumping with a violation of probation; resisting; obstruction; failure to appear; failure to notify police of accident; *inter alia*. These instances of criminal conduct show a disdain for authority. Furthermore, Defendant's inability to control his need to be around minors as well as his willingness to abscond

when faced with the consequences of his actions – is extremely concerning and demonstrates that he does pose a risk to the community.

Finally, the defense argues in its sentencing memorandum and request for a variance, that the defendant discussed complying with his sex offender registration requirements once he had arrived to the United States, at the beginning of May 2016. (Doc 145). However, the defendant did not register because the Lee County Sheriff's website only displayed information for registering in person at the Sheriff's Office. *Id.* The defendant's actions demontrate that he had no intention of registering and whatever conversation he had about complying was merely to placate his infirmed father.

To illustrate the defendant's lack of intention to register, there is the glaringly obvious fact that the defendant never called the Sheriff's Office to see what someone in his condition could do to comply with his requirements, even though the Lee County Sheriff's Office website listed its nonemergency telephone number, and he had a working phone available. Additionally, as discussed *supra*, the defendant traveled several times from his parents' home in Burnt Store Marina to his doctor's office in Fort Myers, which is approximately 30 miles in each direction. Though the defendant from his home to the doctor's office doctor and he went to Wal-Mart to fill his prescription and buy socks and underwear, he choose not to register as a sex

offender even though the Lee County Sheriff's Office is less than two miles from his doctor's office.

Furthermore, on multiple occasions, the defendant denied to his spouse and the Cambodia media that he had been convicted of a sex offense. Since sex offenders' registration are posted on the internet, he did not want anyone in Cambodia to know that he had lied about being a convicted sex offender.

Finally, the defendant had experience with arrests by warrant prior to his arrival to Florida in May 2016. An outstanding arrest warrant had precipitated his 2010 Oregon conviction when he arrived from the Kingdom of Thailand (Thailand) to Chicago, Illinois on December 25, 2009. Pursuant to the arrest warrant, law enforcement arrested the defendant in Chicago and him to Oregon. Without a doubt, that experience was in the defendant's mind when he chose not to alert authorities of his whereabouts and subject himself to the outstanding warrant that he had for his arrest in Oregon. Similarly, the defendant did not call his Oregon probation officer and advised her that he had returned to the United States or ask her for help registering as a sex offender in Florida.

For these same reasons, the twenty-one months of imprisonment followed by a ten-year term of supervised release is appropriate.

### C. Deterrence

There is a strong need for deterrence in this case. Although the defendant was well aware of the requirements imposed upon him by state and federal sex offender laws, he chose to flout those requirements and flee to a foreign country for five years, where he was able to live under the radar and without accountability to law enforcement or receive treatment as required by his probation.

A significant sentence is necessary to deter defendant from attempting to similarly avoid his sex offender registration obligations in the future. In addition, such a sentence will put other sex offenders on notice that knowing failures to register will be taken seriously, particularly where, as here, a defendant simply refuses to comply with his registration requirements at all. A term of imprisonment of twenty-one months followed by ten years of supervised release should be sufficient, but not greater than necessary, to serve these purposes.

### D. Protection of the Public

The United States opposes any request for a downward variance that the defense requests in document 145 or any subsequent request. One of the main purposes of the Adam Walsh Act was to track sex offenders as a way to deter them from re-offending and to protect the public by making citizens

aware of the presence of convicted sex offenders in their communities. As noted above, the defendant's conduct was precisely the type that the Adam Walsh Act was meant to cover. In order to protect the public from further sex offenses and failure to register offenses, the United States recommends a sentence of twenty-one months imprisonment and a ten-year term of supervised release. Such a sentence is appropriate for the protection of the public. Both the term of imprisonment and the term of supervision should ensure that the defendant does not slip through the cracks by moving from state-to-state or to foreign countries and failing to register. It is also appropriate given the defendant's prior sex offense conviction, and his inability to refrain from contact with minor children while he lived in Cambodia.

Furthermore, it seems that the defendant plans to return to Cambodia after he serves his sentence. As a foreign jurisdiction and without any mutual legal assistance treaties between the United States and Cambodia, the defendant will be free to encounter any child he desires in Cambodia without fear of any consequences from United States law enforcement. Furthermore, all the defendant has to do is "legally change his name" so he can live in "peace in [P]hnom [P]enh."[3] A sentence of twenty-four months and a

---

[3] http://www.khmer440.com/chat_forum/viewtopic.php?f=1&t=54898&p=771791&sid=2a992fff07d9b3ce56703d726e34527e#p771791

supervised release period of ten years will protect the public including the public in Cambodia, and if the defendant's wife wants to come to the United States, she will have to apply for a spousal visa instead of a tourist visa.

### E. Unwarranted Disparities

The United States' recommendation lies within the advisory Guidelines range and within the range of sentences imposed in other SORNA cases in this district. Further, a twenty-one month prison sentence would be comparable to other SORNA sentences in this District. Within the past few years, district courts have imposed varied sentences that are consistent with the sentence requested by the United States in the case *sub judice*. *See United States v. Willie Tillies*, 6:16-cr-00157-Orl-40TBS (sentencing defendant to 24 months imprisonment); *United States v. Natasha Tyler*, 2:16-cr-25-FtM-38MRM (after pleading guilty, sentencing defendant to 18 months imprisonment); *United States v. Shawn Eugene Conrad,* 8:15-cr-471-T-27MAP (sentencing defendant to 24 months imprisonment, 240 months of supervised release); *United States v. Darnell Rivers*, 6:15-cr-00031-Orl-40GJK (sentencing defendant to 22 months imprisonment); *United States v. Kevin Robert Leblanc*, 3:14-cr-00164-J-32MCR (sentencing defendant to 36 months imprisonment and 180 months of supervised release. However, after five (5) years of supervised

---

The defendant's blog post, posted on April 23, 2016

release, the Probation Office should review defendant's progress on supervised release to determine if it is still necessary.) As a result, there is no concern with unwarranted disparities in this case, and the any characterization of the United States' recommendation as "unnecessarily harsh" is simply inaccurate.

## II. CONCLUSION

Based on all the factors outlined *supra*, the United States recommends that this Court impose a sentence of twenty-one (21) months of imprisonment, followed by ten years of supervised release. The United States also request that the Court deny any downward variance requested by the defense.

Respectfully submitted,

W. STEPHEN MULDROW
Acting United States Attorney

By: */s/ Michael C. Baggé-Hernández*
MICHAEL C. BAGGÉ-HERNÁNDEZ
Assistant United States Attorney
Florida Bar No. 0051923
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: michael.c.bagge@usdoj.gov

**U.S. v. Eric David Erdmann**          **Case No. 3:16-cr-62-FtM-38MRM**

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Counsel of Record

*/s/ Michael C. Baggé-Hernández*
MICHAEL C. BAGGÉ-HERNÁNDEZ
Assistant United States Attorney
Florida Bar No. 0051923
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:   (813) 274-6000
Facsimile:    (813) 274-6358
E-mail: michael.c.bagge@usdoj.gov